**James Loman HUFF, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 07–81–0031–CR.**

Court of Appeals of Texas, Amarillo.

March 30, 1982.

Randy Taylor, Dallas, for appellant.

Roland Saul, Crim. Dist. Atty., David Martinez, Asst. Crim. Dist. Atty., Hereford, for appellee.

Before REYNOLDS, C. J., and DODSON and BOYD, JJ.

REYNOLDS, Chief Justice.

In a trial before a jury, appellant James Loman Huff was found guilty of theft, Tex. Penal Code Ann. § 31.03 (Vernon Supp. 1982), the punishment for which was fixed by the jury at three years confinement and a $3,000 fine. On the jury's recommendation of probation, the court probated the period of confinement, but ordered payment of the $3,000 fine.

Appealing, appellant contends that the trial court erred in overruling his motion for instructed verdict based on insufficiency of the evidence to prove three elements of the offense, in failing to probate the fine, and in charging the jury on the law of criminal responsibility. However, he demonstrates only the entitlement to a reformation of the judgment to decree that the fine also be probated. Reformed and affirmed.

The record reflects that a few days before 6 November 1979, Jeff Carlile, President of Hereford State Bank, received a telephone call in reference to a donation to Kids, Inc. Although the caller identified himself, Mr. Carlile was unable to remember the caller's name and could not testify that the caller was appellant. Mr. Carlile remembered that the caller told him he had just moved to Hereford, was working for a utility company, and had been asked by a coach for Kids, Inc. to contact the bank concerning a donation to send a Deaf Smith County football team to Dallas to participate in the Big "D" Bowl finals. Mr. Carlile recently had served on the board of directors for Kids, Inc. and was not aware they had a football team, but he told the caller to bring in a voucher and the bank would donate $225 to send one child to Dallas to play in the finals. Mr. Carlile testified that the caller agreed to do so.

On 6 November 1979, appellant came to the Hereford State Bank with a statement. He told Thelma Lamm, a bank secretary, that he had talked with Mr. Carlile and needed to see him. According to Ms. Lamm, appellant related to her that Mr. Carlile was going to make a donation to the Junior League Football. Appellant never mentioned Kids, Inc.

Ms. Lamm took the statement from appellant to Mr. Carlile for approval. The statement, a printed form completed with hand printing, was prepared to show it was from Junior League Football to Hereford State Bank for "ADVERTISING BIG D BOWL FINALS $225.00." Both Mr. Carlile and Mr. Craig, vice-president of the bank, initialed the statement which indicated their authorization for issuance of the $225 check. It was Mr. Carlile's testimony that he "made the donation because of the Kids, Inc. part of the deal and because it was from Hereford going to Dallas to represent Deaf Smith County, or Hereford," and that, notwithstanding his authorization, he was not asked to, and he did not and never would, purchase advertising in Dallas.

Ms. Lamm prepared a bank check, coded it "123" to indicate it was for public relations, made it payable to Junior League Football for $225, and gave it to appellant. After looking into Mr. Carlile's office and saying, "Thanks, Mr. Carlile," appellant left the bank with the check. That was, until the trial, the only time Mr. Carlile had seen appellant.

The check was endorsed "Junior League Football" and cashed, the bank paying out $225. In the

BIG—D—BOWL FINALS

OFFICIAL PROGRAM

sponsored by

DALLAS PLEASANT GROVE FOOTBALL ASSOCIATION

10 AND UNDER STEELERS

BILL BARGER, COACH

the Hereford State Bank was listed among numerous other firms and individuals as sponsors and donors. Mr. Carlile conceded that the statement-receipt for the $225 stated it was for advertising and, when asked if that is what he got, he answered, "Yes, sir."

Testimony was adduced at trial bearing on appellant's authority to solicit funds for the Big "D" Bowl Finals program. Lieutenant Elija E. Neu, the minister of the Pleasant Grove Salvation Army Church, Community Center director and "head man" in charge of the football program, testified that he neither knew appellant nor had given him authority to solicit funds for the football games. In fact, according to Lt. Neu, the Pleasant Grove Salvation Army is not allowed to solicit funds for the bowl finals, in which only local teams participate, and, to his knowledge, no funds were solicited, although each team funded its own cost of uniforms and equipment.

To contradict the State's evidence indicating a lack of authority to solicit donations, appellant presented the testimony of William Barger, former athletic director for the Pleasant Grove Salvation Army and coach of the "11 and under Steelers." Barger stated that it was up to each team to raise funds for the teams.

According to Barger, a parent of one of his team members told him that Ernie Manicchia was going to donate $750 to the team and set up an appointment. Although Barger never met appellant, Mr. Manicchia met with Barger and told him that appellant would donate $750 in return for a list of the scheduled Big "D" Bowl games with which appellant would compile an advertising program. Manicchia presented Barger with a contract which had been signed by appellant authorizing appellant to solicit advertisements for the program. Barger received the $750 in exchange for the arrangement, and later was fired for this and similar activities. The programs were delivered either on the day before the games or on the day of the first game.

Appellant did not testify at the guilt-innocence stage of the bifurcated trial. He presented the witness Manicchia.

In its charge to the jury, the trial court, advising the jury that this is a case depending for conviction on circumstantial evidence, instructed on the law of circumstantial evidence. Next, the court, after abstractly instructing on the law of criminal

responsibility as a party, applied the law of parties to the facts. With his fifth ground of error, the ground we first consider, appellant submits the court erred in charging the jury on the law of parties because "[a]ppellant was the sole actor in this case." We do not agree.

The State's prosecution of appellant for theft embraced the theory that, and only could be sustained under the allegations and proof if, Mr. Carlile's consent to appellant's acquisition of the bank's check was induced by deception, thereby rendering appellant's appropriation of the check unlawful. The deception sought to be proved was that Mr. Carlile was telephonically induced, and agreed, to make a donation to send one member of the Kids, Inc. football team to Dallas to represent Deaf Smith County or Hereford in the football finals when, in actuality, the funds thereby obtained were applied to advertising the bank in a Dallas football program, a purpose Mr. Carlile said he did not and never would authorize.

Evidence that appellant received the check upon presentation of the statement for specified advertising, which was accorded the bank, is not, without more, proof from which deception on the part of appellant may be inferred. The deception was initiated via telephone by one not shown to be the appellant.

However, a person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both; and each party to an offense may be charged with the commission of the offense. Tex.Penal Code Ann. § 7.01(a) and (b) (Vernon 1974). A person is criminally responsible for the conduct of another if, *inter alia*, "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." Tex.Penal Code Ann. § 7.02(a)(2) (Vernon 1974).

Whether a person is a party to an offense by virtue of his own conduct or by the conduct of another for which he is criminally responsible may be ascertained by apply-

ing a test first enunciated in *McCuin v. State*, 505 S.W.2d 827, 830 (Tex.Cr.App. 1974), in these words:

> Where the evidence introduced upon the trial of the cause shows the active participation in the offense by two or more persons, the trial court should first remove from consideration the acts and conduct of the non-defendant actor. Then, if the evidence of the conduct of the defendant then on trial would be sufficient, in and of itself, to sustain the conviction, no submission of the law of principals is required. . . .

> On the other hand, if the evidence introduced upon the trial of the cause shows, or raises an issue, that the conduct of the defendant then upon trial is not sufficient, in and of itself, to sustain a conviction, the State's case rests upon the law of principals and is dependent, at least in part, upon the conduct of another. In such a case, the law of principals must be submitted and made applicable to the facts of the case. . . .

Although the distinction between principals and accomplices has been abolished, Tex.Penal Code Ann. § 7.01(c) (Vernon 1974), the *McCuin* test remains a viable means for determining when a cause should be submitted with a charge on the law of parties and when none is required. *See, e.g., Apodaca v. State*, 589 S.W.2d 696, 698 (Tex.Cr.App.1979), and *Romo v. State*, 568 S.W.2d 298, 303 (Tex.Cr.App.1978) (opinion on State's motion for rehearing), where the *McCuin* criteria were discussed in the context of a § 7.02(a)(2) situation.

Under the *McCuin* test, appellant's evidenced conduct did not, in and of itself, render him criminally responsible as the sole actor; therefore, it was necessary to the State's burden of proof to show that appellant was criminally responsible as a party to the deception. To this end, the State evidenced that (1) appellant appeared at the bank following the telephone call during which Mr. Carlile agreed to make a donation for a specific purpose upon presentation of a voucher; (2) appellant stated he had talked with Mr. Carlile who was going to make a donation; and (3) yet he arrived not with a voucher for the donation agreed upon, but with a statement prepared to acknowledge receipt of funds for advertising, which never had been discussed.

■ When drafting its jury charge, the trial court, in determining whether one has participated as a party, may look to events before, during and after the commission of the crime. *Tarpley v. State*, 565 S.W.2d 525, 529 (Tex.Cr.App.1978). While an agreement of parties to act together in common design seldom can be proved by direct evidence, reliance can be had on the actions of the parties showing, by either direct or circumstantial evidence, an understanding and a common design to do a certain act. *Ex parte Prior*, 540 S.W.2d 723, 727–28 (Tex.Cr.App.1976). Moreover, one can be a party to an offense when he advises or agrees to the commission of the offense and is present when the offense is committed. *Id.* at 728.

■ In the light of these principles, the indictment and the state of the evidence, appellant is guilty of theft only if he, acting with intent to promote or assist the commission of the offense, solicited, encouraged, directed, aided, or attempted to aid the unnamed telephone caller to commit the deception. In these circumstances, the trial court should properly apply the law of parties to the facts. *Romo v. State, supra*, at 303. So, here, the trial court did not err in instructing the jury on, and in applying to the facts, the law of parties. The fifth ground of error is overruled.

By his first three grounds, appellant contends the evidence is insufficient to prove that he (1) deprived owner Carlile of a value of $225, (2) knowingly and intentionally intended to deprive Mr. Carlile of property, and (3) appropriated the check without the owner's effective consent. The grounds are founded on appellant's premise that he practiced no deception on Mr. Carlile, who received what he signed for—advertising, and that Mr. Carlile's remedy should have been a civil suit for breach of contract instead of a criminal complaint.

When resolving a sufficiency of the evidence question in a criminal appeal, we must review the evidence in the light most favorable to the jury verdict. *Thomas v. State*, 605 S.W.2d 290, 292 (Tex.Cr.App. 1980). In this cause and additional to the evidence previously noted, the bank's check for $225 delivered to appellant was introduced in evidence, and Mr. Carlile testified that he lost $225 when the check was cashed.

A check is property subject to theft, *Barefield v. State*, 169 Tex.Cr.R. 76, 331 S.W.2d 754, 756 (Tex.Cr.App.1960), and, by the definition given property in Tex.Penal Code Ann. § 31.01(6)(C) (Vernon 1974), the value of a check is its face amount. *Accord, Christiansen v. State*, 575 S.W.2d 42, 44 (Tex.Cr.App.1979). *Cf. Cooper v. State*, 509 S.W.2d 865, 867 (Tex.Cr.App.1974) (evidence that a check would be, upon endorsement and presentation, paid in its face amount is proof of its value). Evidence that appellant kept the check, even were it uncashed, adequately expresses, in the absence of a showing that he had any intention to return it voluntarily, an intent to deprive the owner of the property permanently. *Draper v. State*, 539 S.W.2d 61, 68–69 (Tex.Cr.App.1976). Measured by these principles, the proof sufficiently evidences to a rational trier of the facts that appellant deprived Mr. Carlile of property of a value of $225.

Still, before appellant would be guilty of the theft, the State must prove, as it alleged, that appellant obtained the check without Mr. Carlile's effective consent. Tex.Penal Code Ann. § 31.03(b)(1) (Vernon Supp.1982). Of course, by initialing the statement, Mr. Carlile consented to the issuance and delivery of the bank's check to appellant; nevertheless, consent is not effective, *i.e.*, consent given is vitiated, if it is "induced by deception." Tex.Penal Code Ann. § 31.01(4)(A) (Vernon 1974). The evidence of deception—*i.e.*, obtaining funds by the false representation of a donation for local benefit when receipting for them as an expenditure for alien advertising—has been recorded above and will not be restated. The recorded evidence further circumstantially connected appellant to the deception as noted, thereby prompting the court to properly instruct on the law of circumstantial evidence and the law of parties, and to apply the law to the facts in its charge to the jury. Given the evidence and a proper charge, the jury was entitled to find that Mr. Carlile's consent was vitiated by the deception and, being advised of the restrictions the law places on them in condemning one on circumstantial evidence, the jury also could reasonably conclude that every reasonable hypothesis other than appellant's participation in the deception was excluded.

■ Thus, under the standard of review for appellant's evidential challenges, we hold the evidence to be sufficient for the jury to find, as it did, that appellant was criminally responsible as a party to the offense of theft charged. And the fact that an appellant's actions may give rise to a civil suit for recovery of the funds obtained is no bar to a criminal prosecution for theft if the funds were obtained unlawfully. *Draper v. State, supra*, at 68–69; *Rummel v. State*, 509 S.W.2d 630, 632–33 (Tex.Cr. App.1974). Grounds one, two and three are overruled.

■ Having found appellant guilty of theft as alleged in the indictment and having assessed his punishment at three years in the Texas Department of Corrections and a fine of $3,000, the jury's verdict also announced that:

We, the Jury, find that the Defendant is eligible for probation and we recommend to the Court that he be granted probation.

Accepting the jury's verdict, the court suspended the imposition of sentence and decreed that appellant be placed on probation for three years, but that he pay the $3,000 fine in installments.

By his fourth ground of error, appellant contends the court erred in requiring him to pay the fine. We agree.

Our court of supreme jurisdiction in criminal matters has consistently held that

where the jury, after assessing punishment of both imprisonment and fine, has recommended probation, the court must probate both. *Goehring v. State,* 627 S.W.2d 159, 165 (Tex.Cr.App.1982); *Chudleigh v. State,* 540 S.W.2d 314, 318 (Tex.Cr.App.1976); *Shappley v. State,* 520 S.W.2d 766, 774 (Tex. Cr.App.1974). *See, also, Johnson v. State,* 473 S.W.2d 939 (Tex.Cr.App.1971). Nevertheless and notwithstanding the jury's verdict here, the State argues that the trial court had the authority under the Adult Probation Law, Tex.Code Crim.Pro.Ann. art. 42.12 (Vernon 1979), to require the probationer to pay his fine as a condition of probation. The same argument was made by the State and rejected by the court in *Shappley v. State, supra,* at 774–76, a decision binding on us. The fourth ground is sustained.

Accordingly, to conform the judgment to the jury's verdict, the judgment is reformed to decree that the $3,000 fine also is probated. As reformed, the judgment is affirmed.