A jury found appellant guilty as charged in an indictment which alleged in pertinent part that accused:
 ". . . Did knowingly obtain or exert unauthorized control over, to-wit: First United Methodist Church at Saks checks numbered 874, 875, 878, 879 and 880, the property of the First United Methodist Church, of the aggregate value of, to-wit: $949.55 with the intent to deprive the said church of the said property, in violation of § 13A-8-4 of the Code of Alabama, against the peace and dignity of the State of Alabama."
At the conclusion of the sentence hearing, at which after due notice the State contended and proved that defendant had been previously convicted of three felonies[1], defendant was sentenced to imprisonment for life. The Code section cited in the indictment, § 13A-8-4, captioned "Theft of property in the second degree," provides in the first two paragraphs thereof:
 "(a) The theft of property which exceeds $100.00 in value but does not exceed $1,000.00 in value, and which is not taken from the person of another, constitutes theft of property in the second degree.
 "(b) Theft of property in the second degree is a Class C felony."
The codification of the Habitual Felony Offenders Act provides at § 13A-5-9 (c)(1) that when "a criminal defendant has been previously convicted of any three felonies and after such convictions has committed another felony, he must be punished by imprisonment for life or for any term not more than 99 years but not less than 15 years. . . ."
The first issue presented by appellant is thus stated in his brief:
 "Did the State produce sufficient evidence to support a charge of theft in the second degree when the undisputed evidence showed all that was allegedly stolen was nine blank checks that were later forged and cashed."
At the conclusion of the evidence presented by the State, defendant orally moved for a judgment of acquittal which, after argument by attorneys for the respective parties, was overruled. The defendant then rested without presenting any evidence, arguments were made by counsel for the respective parties, the court charged the jury orally, and soon thereafter the jury returned a verdict finding the defendant guilty as charged in the indictment.
We quote the following from appellee's brief under the caption of "STATEMENT OF THE FACTS":
 "The present case involves a case of theft in the second degree from the First United Methodist Church of Saks. Robert B. Tillett, manager of Borden's Dairy in Anniston and treasurer of First United Methodist Church of Saks, testified that he discovered five checks which had been paid on the church bank account when he received the September statement in early October. Tillett also testified that he recalled two women and one man having come into Borden's Dairy in mid-September, 1982, inquiring about employment . . . Tillett testified that after receiving the September statement, he examined the church check book and discovered that nine checks were missing, of which five had been cashed (R. 12-14). Tillett identified the five checks which had been paid on the church account which he did not sign and which had been stolen from the check book at the dairy."
Mr. Tillett further testified to the effect that in mid-September, 1982, "a large, white male," accompanied by two females, was in Borden's Dairy. As further stated in appellee's brief:
 "Barney Mathews and Kim L'Heureux testified that they were co-conspirators with the appellant and that the three of them went to Borden's Dairy in mid-September, *Page 494 
1982 . . . that the appellant took three pages of checks from the check book of the First United Methodist Church of Saks which was in Tillett's desk in Tillett's office. Mathews acted as look out and L'Heureux distracted Tillett by asking him several questions about employment. Mathews and L'Heureux identified the appellant as being the person who physically took the checks from Borden's Dairy. (R. 31, R. 90). . . . Mathews then testified that the three would wait until after Borden's Dairy was closed for the night and would call to make sure there was no answer. The appellant would then fill in the amount on the check with a check stamping machine and ordered Mathews to fill out the date and payee and to forge the check with the name Bob Tillett. Deerman then instructed the other woman, Kim L'Heureux, to go into a grocery store and cash a check while Mathews and Deerman waited in the parking lot. Mathews, L'Heureux and Deerman would then share the proceeds of the check."
The two witnesses further testified that they had used the same means of operation to steal checks from other businesses in Calhoun County. According to the undisputed evidence, the aggregate value of the five checks as the amounts had been filled in in the blank spaces thereof was $949.55.
In support of its position that there was sufficient evidence for the jury to find appellant guilty of theft in the second degree and that the trial court was correct in denying defendant's motion "for a directed verdict," appellee relies largely upon Section 13A-8-1 (14), which provides:
 "VALUE. The market value of the property at the time and place of the criminal act.
 "Whether or not they have been issued or delivered, certain written instruments, not including those having a readily ascertainable market value such as some public and corporate bonds and securities shall be evaluated as follows:
 "a. The value of an instrument constituting an evidence of debt, such as a check, draft or promissory note, shall be deemed the amount due or collectible thereon or thereby, that figure ordinarily being the face amount of the indebtedness less any portion thereof which has been satisfied.
 "b. The value of any other instrument that creates, releases, discharges, or otherwise affects any valuable legal right, privilege or obligation shall be deemed the greatest amount of economic loss which the owner of the instrument might reasonably suffer by virtue of loss of the instrument.
 "When the value of property cannot be ascertained pursuant to the standards set forth above, its value shall be deemed to be an amount not exceeding $100.00."
Appellee argues that it is the "duty of the court to ascertain and give effect to the legislative intent as expressed from the words of the statute. [Winstead] Winsted v.State, 375 So.2d 1207 (Ala.Civ.App. 1979), cert. denied, Exparte [Winstead] Winsted, 375 So.2d 1209 (Ala. 1979)." We agree, but we do not agree with the contention that the Legislature intended by the language quoted that the undisputed facts in the instant case show the violation of the particular statute involved.
We have no difficulty in reaching the conclusion that the Legislature did not intend by § 13A-8-1 (14) that a blank check, whether personalized or not, is "an instrument constituting an evidence of debt" and that nothing that was done to and with such blank check by defendant and his accomplices made the check "an instrument constituting an evidence of debt." They made the instrument to appear as if it were an evidence of debt. Such conduct constitutes forgery in the second degree as defined and proscribed by Section 13A-9-3:
 "(a) A person commits the crime of forgery in the second degree, with intent to defraud, if he falsely makes, completes or alters a written instrument which is or purports to be, or which is calculated to become or to represent if completed: *Page 495 
 "(1) A deed, will, codicil contract, assignment or a check, draft, note or other commercial instrument which does or may evidence, create, transfer, terminate or otherwise affect a legal right, interest, obligation or status; or
". . . ."
The trial court committed reversible error by its denial of defendant's motion for a judgment of acquittal. This conclusion makes it unnecessary for us to consider any of the other three issues presented by appellant. We do not, and probably should not, endeavor to delineate the course of any further prosecution of this appellant for what, according to the undisputed evidence, he has done. The judgment of the trial court should be reversed and the cause remanded for any further proceedings consistent with this opinion.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
REVERSED AND REMANDED.
All the Judges concur, except HUBERT TAYLOR, J., who dissents.
[1] Many more, as many as about nine previous felony convictions, were shown.