**Larry Glenn DICKERSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–85–01312–CR.**

Court of Appeals of Texas, Dallas.

Aug. 8, 1986.

Joe Max Shelton, Sherman, for appellant.

Kellis W. Sampson, Sherman, for appellee.

Before VANCE, McCLUNG and HOLL-INGSWORTH, JJ.

McCLUNG, Justice.

Larry Glenn Dickerson appeals his conviction for theft of property valued at $750 or more but less than $20,000, contending that the evidence is insufficient to prove that (1) appellant knew that the property had been stolen and (2) the value of the stolen property was between $750 and $20,-000. We agree with appellant's second contention, and accordingly, reverse and remand with instructions to acquit.

Complainant, Mike Wood, testified that he was the owner of the Apollo Marble Company. Around July 15, 1985, he discovered that a telephone-answering machine and fifty blank checks were missing from his business. He immediately had the bank place a "hold" on the missing checks. Only one check was paid by the bank. All other checks presented from those missing were refused and returned "to the people who accepted the checks." The bank subsequently reimbursed Wood's account for the amount paid on the one check.

Wood also testified that at the time of the theft, there was more than $2,000 in his business account. He placed a value of approximately $149 on the answering machine and stated that he had paid over $100 for between 500 to 1000 blank checks. According to Wood, $1690 was obtained on the stolen checks.

Ted Hayes testified that he was a detective with the Coppell Police Department, and that on July 22, he questioned appellant in reference to an investigation. A search of appellant's motel room revealed "several checks on the Apollo Marble Company ... plus [an] answering-phone machine." Appellant was placed under arrest, and the room was locked to prevent anyone from entering. Hayes obtained appellant's consent and returned the next day to search the room. He recovered the blank and cancelled checks on the Apollo Marble Company and the box for the answering machine. Several of the checks recovered were made out by appellant. The answering machine had been removed from the room by persons unknown.

Beth Greenhurst, a vice-president of American Bank in Sherman, testified that the market value or replacement cost for 50 blank checks, similar to those stolen, was probably "about eight dollars." She also testified that "the greatest amount of economic loss that the owner [of the stolen checks] might reasonably suffer by virtue of loss of those checks" would be "[a]ny amount" and "[c]ertainly more than seven hundred and fifty dollars, if he had that much in his account."

Sufficiency of the evidence is measured by the standard enunciated by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979): "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Dickey v. State*, 693 S.W.2d 386, 387 (Tex.Crim.App.1984). In appellant's second ground of error, he asserts that by placing a value of $8 on the stolen blank checks and $149 on the answering machine, the total is far less than the $750 amount alleged in the indictment. The State counters that because the evidence shows that over $2,000 was in the Apollo Marble account when the checks were stolen, this amount represents the greatest economic loss the owner might reasonably suffer, or the value of the stolen checks.

The value of a blank check in a theft case appears to be a question of first impression in Texas. Neither the authority relied upon by the State nor any that we have discovered ourselves is applicable. In *Huff v. State*, 630 S.W.2d 909, 913 (Tex.App.— Amarillo 1982, no pet.), the appellant was convicted for stealing an endorsed check made out for $250. In *Christiansen v. State*, 575 S.W.2d 42, 44 (Tex.Crim.App. 1979), the appellant was convicted of using a check drawn on a closed account to secure four money orders valued at $241.80. In *Cooper v. State*, 509 S.W.2d 865, 866 (Tex.Crim.App.1974), the appellant was convicted of stealing an unendorsed check made out for $51.86. Finally in *Fulshear v. State*, 59 Tex.Crim.R. 376, 128 S.W. 134,

134 (1910), the appellant was convicted for stealing an unendorsed paycheck made out for $65.47. Cf. *Rasbury v. State*, 136 Tex. Cr.R. 506, 126 S.W.2d 972, 973–74 (1939) (evidence held to be insufficient to support a theft conviction where a check secured by fraud was drawn against an account containing no money); and *Brown v. State*, 97 Tex.Cr.R. 402, 262 S.W. 479, 480 (1924) (evidence was held insufficient to support a theft conviction because there was no showing that there were adequate funds in the account to cover a stolen check made out for $87).

In *Huff, Christiansen, Cooper*, and *Fulshear*, all of the stolen checks had an ascertainable value (greater than that of the blank check itself) at the time of the theft. Here, the State is attempting to fall within the parameters of section 31.08(b)(2) of the Texas Penal Code which states that the value of documents other than those having a readily ascertainable market value is:

> (2) the greatest amount of economic loss that the owner might reasonably suffer by virtue of loss of the document, if the document is other than evidence of a debt.

The closest case on point that we have been able to find is *Deerman v. State*, 448 So.2d 492 (Ala.Crim.App.1984). There, the appellant was convicted for taking five blank checks, filling them out in an amount totalling $949.55, and cashing them. The appellant was prosecuted under an Alabama statute which provided:

> VALUE. The market value of the property at the time and place of the criminal act.

> Whether or not they have been issued or delivered, certain written instruments, not including those having a readily ascertainable market value such as some public and corporate bonds and securities shall be evaluated as follows:

> a. The value of an instrument constituting an evidence of debt, such as a check, draft or promissory note, shall be deemed the amount due or collectible thereon or thereby, that figure ordinarily

being the face amount of the indebtedness less any portion thereof which has been satisfied.

b. The value of any other instrument that creates, releases, discharges, or otherwise affects any valuable legal right, privilege or obligation shall be deemed the greatest amount of economic loss which the owner of the instrument might reasonably suffer by virtue of loss of the instrument.

When the value of property cannot be ascertained pursuant to the standards set forth above, its value shall be deemed to be an amount not exceeding $100.00.

The Court concluded that a blank check, whether personalized or not, is not an instrument constituting an evidence of debt. *Deerman,* 448 So.2d at 494. The Court also impliedly held that a blank check was not an instrument creating, releasing, discharging, or otherwise affecting any valuable legal right under section "b" of the Alabama statute.

Since, in our case, the State is attempting to ascertain value under § 31.08(b)(2) of the Texas Penal Code, it is apparently ready to concede that a blank check is not an evidence of debt. The main question presented, as it was in *Deerman,* is whether the legislature intended that an appellant could be prosecuted under the theft statute for "the greatest amount of economic loss that the owner might reasonably suffer by virtue of loss" of a blank check. We hold, as did the court in *Deerman,* that this was not the legislature's intent. Unless the State intended to prosecute appellant for the value of the blank checks themselves, prosecution, if any, should have been under the forgery statutes. *See Deerman,* 448 So.2d at 494; *see also* Chapter 32, Subchapter B, of the Texas Penal Code.

The exhibits introduced at trial consist of several cancelled checks for which no value was established, several blank checks, several checks made out by appellant, and the empty box to an answering machine. The answering machine was valued at approximately $150. Because we hold that the value of the blank checks is neither the amount the checks were later filled in for nor the amount in the bank account at the time the checks were stolen, the evidence is insufficient to establish theft of $750 or greater. Appellant's second ground of error is sustained. Having sustained appellant's second ground of error challenging the sufficiency of the evidence to support the conviction, we need not address appellant's first ground of error.

The judgment of the trial court is reversed and the cause remanded to the trial court for entry of a judgment of acquittal. *See Garrett v. State,* No. 642-83 (Tex.Crim. App. June 11, 1986).

REVERSED and REMANDED.