Pernell Dale BRATCHER, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–88–00178–CR.

Court of Appeals of Texas, San Antonio.

April 19, 1989.

Douglas S. Daniel, Daniel, Manning & Ralls, San Antonio, for appellant.

Fred G. Rodriguez, Lyndee Bordini, Mary Lou Castillo, Jay Brandon, Criminal Dist. Attys., San Antonio, for appellee.

Before BUTTS, CARR and ONION *, JJ.

## OPINION

ONION, Justice (Assigned).

This appeal is taken from a conviction for murder where the jury, after finding the appellant guilty, assessed punishment at confinement in the Department of Corrections for life.

The appellant advances six points of error, but does not challenge the sufficiency of the evidence to sustain the conviction. We shall briefly mention the facts to place the points of error in proper perspective.

The State's evidence shows that on the morning of May 7, 1987, the deceased, Debra Sue Cotton, age 19, borrowed a car to run an errand. She did not return. On the evening of May 11, 1987, her decomposing body was found in a box in a field in the Heritage Northwest subdivision near the Ed Cody Elementary School in Bexar County. Around the deceased's neck was an electrical cord and a nylon jump rope with

* Presiding Judge, Court of Criminal Appeals, Retired, sitting by appointment of the Chief Justice of the Supreme Court of Texas.

a knot. The cause of death was shown to be strangulation by ligature. The car was recovered in the same general area.

Other evidence showed that the deceased arrived at 10239 Harvest Time on the morning of May 7th where the 21 year old appellant was living alone with 16 year old Elena Moore, a high school student, whose grandmother was visiting in Germany.

Elena testified she met appellant in January, 1987, and they had a girl friend-boy friend relationship, and that he moved in a week or so after her Grandmother left for Germany in April. She saw the deceased, Debra Cotton, when Cotton drove the appellant to the Moore home on one occasion, and on May 6, 1987, she heard the appellant say he was going to kill Debra. On the same date she related that Debra came to her house and talked to the appellant in the living room and garage, but she didn't hear their conversation.

On the morning of May 7, 1987, Debra called and then arrived at the Moore house driving a small gray or silver car. Elena let Debra into the house and talked to her in the living room until appellant came out of her bedroom. At this time, Elena related Debra and appellant went to another bedroom and then migrated to her grandmother's master bedroom. Fifteen minutes later Elena found the bedroom door locked, heard appellant grunting, and looking under the door she saw Debra's feet going up and down. She thought they were having sex and was upset. She was able to pick the lock and then saw appellant astride Debra's thighs choking her with an electrical cord, pulling it "tighter and tighter."

At appellant's request she polished the furniture, got plastic bags and tape to use on the body, and assisted appellant as he placed the body in the attic above the garage. They then left in Debra's car to see if they could cash a check at Debra's bank. Failing in that endeavor, they then visited some of appellant's relatives and stayed away until dark. They parked the car some distance from the Moore house. They repeated this pattern for several days, but one morning they found the car had been moved from where they had parked it the night before.

By this time, the odor of the body had become overwhelming. Appellant called a friend and asked him to bring his truck and help move the body of a Great Dane dog belonging to appellant's girlfriend. The deceased's body was taken from the attic and placed in a Christmas tree box Elena had secured from her grandmother's garage. Appellant and his friend then dumped the box in a field where the deceased's body was later found. After a day or so appellant left Elena's house, and when the Sheriff's investigators arrived Elena gave them a false statement before leaving to live in Dallas with her mother. Appellant was not apprehended for some three weeks.

The State offered other evidence that Debra Cotton, the deceased, had met the appellant in April, 1987, and they began to see each other on occasion. As she was living with her regular boy friend Debra used a girl friend to relay messages to and from the appellant. The girl friend, Jo Ann DeLeon, testified that on May 5th appellant had called her and was angry because Debra had not kept a date with him, and threatened to tell Debra's other boy friend about their relationship. Later that day Debra came to DeLeon's house and told her that she and her regular boy friend were going to get married. DeLeon reported appellant's telephone call to Debra who looked scared, but stated she would talk to the appellant. DeLeon related that Debra had called that night and stated she and appellant had an argument, that she slammed the car door and walked away, but she went after him and they made up and were going to be friends. DeLeon never talked to the deceased again.

Appellant testified he met Elena Moore in January, 1987, that she began to call him, and they met nearly every day after she got out of school; that on occasion when no one else was there he spent the night at her house; that she bought him clothes and gave him money. He related that Elena was possessive and jealous and had caused scenes when other girls were around him. He acknowledged that he

moved into Elena's home a week after her grandmother left for Germany, and that a neighbor lady moved out when he moved in.

Appellant told the jury he had known Debra Cotton since 1982, but had renewed his acquaintanceship with her in February, 1987, when he met her on a bus; that she obtained his brother's phone number so she could call him, and explained why he couldn't call where she lived; that they saw each other from time to time, and sometimes they went job hunting together; that he understood why Jo Ann DeLeon was used as a go-between, and that Debra's relationship with her regular boyfriend didn't bother him. He related that Debra knew about Elena, and he had told Elena about Debra, that Debra came by the Moore house on May 5th, 6th and then on the fateful morning of May 7th. On that morning appellant testified that he, Debra and Elena were all smoking marihuana joints and drinking liquor, that a talk show was on television about group sex, two on one sex, etc., that they got to laughing and joking about sex, that he said he could "handle" both of them, and they went to the master bedroom. Appellant testified that after he had sexual intercourse with both women he went to take a shower, that when he returned to the master bedroom he found Elena crying and Debra dead on the bed with a jump rope around her neck, and that he did not see the brown electrical cord on the neck until he moved the body. He reported that Elena said "I told you I was going to get that bitch that you were fucking with." Appellant stated he was leaving, and that Elena threatened to put the blame on him, telling him that he was Black, had no business there, and that no one would believe him; that he took the phone from her when she threatened to call the police because he panicked; that he agreed to help Elena. His testimony about placing the body in the attic, going to the bank, parking the car at different locations, disposing of the body in a field closely parallels that of Elena Moore. Appellant admitted he left the Moore home, and after three weeks he gave himself up to the police.

Initially appellant urges the trial court erred in failing to sustain his objection to the introduction of inflammatory and prejudicial photographs that were cumulative in nature.

The objection was to State's Exhibits 5 through 13, all photographs of the body of the murder victim taken at the location in a field where the body was discovered. They were introduced through the testimony of Sheriff's investigator Sandoval Marin. He testified that a woman's body was found in a box and when opened, it was discovered the body was covered by plastic bags exposing only the mid-section. As the plastic bags were removed photographs were taken of different portions of the clothed body as it was uncovered showing the bound feet, hands, the taped face and ligatures on the neck, etc. Marin testified the photographs accurately reflected what he observed as the body was unwrapped. The objection was that the photographs were cumulative and would serve only to inflame the minds of the jury. It was overruled.

The general rule was stated in *Martin v. State*, 475 S.W.2d 265, 267–68 (Tex.Crim. App.1972), *dism'd w.o.j.*, 409 U.S. 1021, 93 S.Ct. 469, 34 L.Ed.2d 312 (1972), *overruled on other grounds, Jackson v. State*, 548 S.W.2d 685, 690 (Tex.Crim.App.1977). If a photograph is competent, material and relevant to an issue on trial, it is not rendered inadmissible merely because it is gruesome or it might tend to arouse the passions of the jury. If a verbal description of a body and scene would be admissible, a photograph depicting the same would be admissible. If, however, the probative value of the photographs is very slight and the inflammatory aspects great, it would be an abuse of discretion to admit the photographs.

■ Under the circumstances presented including the allegation in the indictment as to the cause of death the photographs were properly admitted under the general rule. *See Burdine v. State*, 719 S.W.2d 309, 317 (Tex.Crim.App.1976), *cert. denied*, 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987). *See also Marras v. State*, 741

S.W.2d 395, 404 (Tex.Crim.App.1987); *Thomas v. State,* 701 S.W.2d 653, 660 (Tex. Crim.App.1985); *Adams v. State,* 685 S.W.2d 661, 668 (Tex.Crim.App.1985); *Moreno v. State,* 587 S.W.2d 405, 411 (Tex. Crim.App.1979). The photographs were not solely offered to inflame the minds of the jurors. Their probative value exceed their inflammatory potential. The court did not abuse its discretion. *Smith v. State,* 683 S.W.2d 393, 403 (Tex.Crim.App. 1984); *Henderson v. State,* 673 S.W.2d 662, 664 (Tex.App.—San Antonio 1984, no pet.). Appellant's initial point of error is overruled.

In his second point of error appellant contends the trial court erred in failing to sustain appellant's timely objection to evidence of an extraneous offense where no basis for the admission of such evidence had been shown.

Such contention relates to the testimony of Laurie Naymik and Rosie Guerra, drive through tellers at the Intercon Bank. Naymik testified that on May 7, 1987, shortly after 12:00 noon a young black man and young blonde white woman drove up in a small grey car and sent in a check to be cashed along with the deceased, Debra Cotton's, "I.D." The "pay to order of" blank on the check had not been filled in, so Naymik returned the check asking that it be filled in or signed. The man returned the check with the name "Debra Cotten" written in as payee. When Naymik didn't see anyone in the car who matched the picture on the "I.D.," she turned to her co-teller Rosie Guerra. Naymik related that when Guerra, who knew Debra Cotton began to question the man he drove off leaving the check and the "I.D." Guerra corroborated the testimony of Naymik, stating that she knew Cotton as a customer, and that when she asked if Cotton was in the car the black man pointed to the blonde woman, but when she told him she knew Cotton and the woman wasn't Cotton they drove off in a car she recognized as one that Cotton frequently used. Neither Naymik nor Guerra made a positive identification of appellant as the man in the car.

The only objection we have found in the record came prior to Naymik's testimony. The court inquired what the State proposed to prove by Naymik and the prosecutor briefly outlined the facts. The record then reflects:

THE COURT: What is the objection to that?

MR. RALLS (Defense Counsel): Extraneous offense. No basis for its admissibility.

THE COURT: Overruled. Let's proceed. Put the jury in the box.

Ordinarily a general objection will preserve nothing for review.

On appeal appellant urges for the first time that it was error to admit the extraneous transaction when the defendant was not shown to be the party guilty of the extraneous offense, or unless the State is prepared to clearly prove that the accused committed the same, citing, *Tippins v. State,* 530 S.W.2d 110, 111 (Tex.Crim.App. 1975). It is well established, however, that the objection at trial must comport with the complaint on appeal or nothing is preserved on appeal for review. *See Barnard v. State,* 730 S.W.2d 703, 716 (Tex.Crim.App. 1987), *cert. denied,* — U.S. ——, 108 S.Ct. 1098, 99 L.Ed.2d 261 (1988); *Thomas v. State,* 723 S.W.2d 696, 700 (Tex.Crim.App. 1986). This was not done in the instant case.

■ Further, appellant overlooks the testimony of Elena Moore. She later testified that two hours or so after appellant murdered the deceased, and they had hidden the body in the attic of her home she went with the appellant to the bank in the car that the deceased had been driving. She described the incident at the bank as had the tellers, even giving more details. All of this testimony was admitted without objection. There can be no reversible error where the same facts to which there was an objection are proven by other testimony to which there was no objection. *East v. State,* 702 S.W.2d 606, 611 (Tex.Crim.App. 1985), *cert. denied,* 474 U.S. 1000, 106 S.Ct. 418, 88 L.Ed.2d 368 (1985); *Withers v. State,* 642 S.W.2d 486, 487 (Tex.Crim.App. 1982). *See also Tamminen v. State,* 644

S.W.2d 209 (Tex.App.—San Antonio 1982), *aff'd in part, rev'd in part,* 653 S.W.2d 799 (Tex.Crim.App.1983). And it appears through Moore the State was prepared to prove that appellant was involved in the check cashing attempt. *Tippins, supra.*

Still further appellant, testifying in his own behalf, stated that shortly after the murder he and Moore drove to the bank and attempted to cash a check as they needed money to leave town. Generally when a defendant offers the same evidence as that objected to or the same evidence is introduced from another source without objection he may not complain on appeal. *Withers, supra; Ricondo v. State,* 657 S.W.2d 439, 445 (Tex.App.—San Antonio 1983, no pet.).

It is also well established, as appellant contends, that an accused is entitled to be tried on the accusation in the State's pleadings, and that he should not be tried for some collateral crime or for being a criminal generally. *Albrecht v. State,* 486 S.W.2d 97, 100 (Tex.Crim.App.1972); *Jones v. State,* 587 S.W.2d 115, 119 (Tex.Crim. App.1979) (opinion on rehearing).

One of the recognized exceptions to the general rule as noted in *Albrecht* is that an extraneous offense may be admissible to show the context in which the criminal act occurred—what has been termed the "res gestae"—under the reasoning that events do not occur in a vacuum and that the jury has a right to hear what occurred immediately prior to and subsequent to the commission of that act so that they may realistically evaluate the evidence. *See Mann v. State,* 718 S.W.2d 741, 744 (Tex.Crim. App.1986), *cert. denied,* 481 U.S. 1007, 107 S.Ct. 1633, 95 L.Ed.2d 206 (1987). *See also Cruz v. State,* 645 S.W.2d 498, 505 (Tex. App.—San Antonio 1982), *aff'd,* 770 S.W.2d 778 (Tex.Crim.App.1984). It has also been said that where the offense is one continuous transaction, or another offense is a part of the case on trial, or blended or closely interwoven therewith, proof of all the facts is proper. *Maynard v. State,* 685 S.W.2d 60, 66 (Tex.Crim.App.1985); *Taylor v. State,* 420 S.W.2d 601, 605 (Tex.Crim.App.1967), *overruled on other grounds, Jackson v. State,* 548 S.W.2d 685, 690 (Tex.Crim.App.1977).

Facts in the instant case show that the incident at the bank occurred some two hours after the murder, and prior to the disposition of the body in the field and prior to appellant leaving town. And clearly the probative value of such evidence outweighed its inflammatory value. *See Cantrell v. State,* 731 S.W.2d 84, 89 (Tex. Crim.App.1987).

For all the reasons stated we overrule appellant's second point of error.

In his third point of error appellant contends the trial court erred in failing to sustain appellant's timely objection to opinion testimony regarding the relative size of the victim's assailant where the proper predicate had not been offered into evidence.

Dr. Robert C. Bux, a medical examiner for Bexar County, was qualified as a forensic pathologist. He testified he had performed an autopsy on the deceased, Debra Sue Cotton, who was identified by dental records because of the decomposition of the body. He found the cause of death was ligature strangulation and revealed that an electric cord which had been cut at one end and a nylon jump rope were found around her neck, and expressed the opinion that either could have caused her death. Dr. Bux found the deceased to be sixty-five and one half inches tall and estimated her weight at time of death to be between 95 and 100 pounds. He found no bruises or marks or trauma to the body. No hair was missing and her fingernails were not broken. Without an objection the doctor expressed the opinion she had died without a struggle. The record then reflects the following on direct examination:

Q: Dr. Bux, based on everything that you have said about your examination of Debbie, the lack of trauma, the lack of bruising or abrasions to her arms or extremities, would you have an opinion as to whether the person who killed her or attacked her would have been the same size or smaller than she was or larger than she was?

MR. RALLS (Defense Counsel): We'll object, Your Honor. Until he is quali-

fied as an expert in that regard, showing whether or not he has had any training in the amount of strength required to perform this ligature strangulation.

THE COURT: That is overruled, counsel.

Dr. Bux, who was earlier shown to have performed 1,450 autopsies to determine the cause of death, then testified the lack of trauma, indicated in his opinion, that "it was more likely that the individual would have been of larger size." He explained that if the individual had been of the same or smaller size, he would expect to see more trauma on the body, because of a struggle between individuals of the same relative size.

Appellant relies upon *Holloway v. State,* 613 S.W.2d 497, 501 (Tex.Crim.App.1981) for the proposition that it must be shown that the witness "possesses special knowledge upon the specific matter about which his expertise is sought."

The State points out that in *Holloway* the witness was Dr. James Grigson who testified that a capital murder defendant would probably commit criminal acts of violence in the future and be a continuing threat to society. *See* TEX.CODE CRIM. PROC.ANN. art. 37.071 (Vernon Supp. 1989). This was error because Dr. Grigson had made no medical or psychiatric examination of the defendant, and based his expressed opinion only upon interviews with other individuals. The Court in *Holloway* wrote:

> [W]hile a duly qualified expert witness may give his opinion based upon sufficient relevant facts, those facts must be either within his personal knowledge, or assumed from common or judicial knowledge, or established by evidence; "his opinion is without value, and is inadmissible, if based upon facts and circumstances gleaned by him from ex-parte statements of third persons, and not established by legal evidence before a jury trying the ultimate issue to which the opinion relates."

*Id.* at 503.

*Mays v. State,* 563 S.W.2d 260 (Tex.Crim. App.1978) held that a medical examiner's testimony concerning the position of the body when the fatal shots were fired was properly admitted "[s]o long as a person has been qualified as an expert in this field and is expressing an opinion based upon his professional expertise, we find no reason why such evidence should be excluded." *Id.* at 263 (footnote omitted).

Citing *Mays,* the court in *Cortijo v. State,* 739 S.W.2d 486, 488 (Tex.App.—Corpus Christi 1987, pet. ref'd) held that for an expert's opinion to be admissible three criteria must be met: (1) the expert must be competent and qualified to testify; (2) the subject must be one upon which the aid of an expert will be of assistance to the jury; and (3) the testimony may not state a legal conclusion. *See also now* TEX.R.CRIM. EVID. 702.

■ Dr. Bux's testimony met the necessary criteria. He was shown to be an expert and qualified to testify. His testimony amounted to no more than interpreting what he found on the deceased's body. It was useful and of assistance to the jury, and he did not state a legal conclusion.

Whether to admit expert opinion testimony of this nature rests largely within the sound discretion of the trial court. *Cortijo, supra,* at 488. No abuse of discretion has been shown in the instant case. Appellant's third point of error is overruled.

In his fourth point of error appellant complains that the trial court erred in failing to sustain his objection to the inclusion of the law of parties in the court's charge to the jury. *See* TEX.PENAL CODE ANN. §§ 7.01, 7.02 (Vernon 1974).

Appellant and Elena Moore were shown to be together before, during and after the alleged offense. Moore was shown to have been giving the appellant money and buying him clothes, and shown to be jealous and possessive of him. She knew of his stated intent to kill the deceased. Moore testified she saw appellant alone strangle the deceased to death with an electrical cord. Appellant testified that Moore committed the murder alone with a jump rope.

Both the cord and the rope were found around the deceased's neck. Appellant and Moore each testified they acted together in disposing of the body, etc. Appellant insisted that the trial court submit to the jury the fact issue as to whether Moore was an accomplice witness urging that the facts supported such submission, and the court so charged. *See* TEX.CODE CRIM. PROC.ANN. art. 38.14 (Vernon 1979). Appellant also urged that under the facts that he acted only in a cover up capacity *after* Moore alone had committed the murder, and that the court should not submit the law of parties to the jury in its instructions. *See and cf. Smith v. State*, 721 S.W.2d 844, 851 (Tex.Crim.App.1986); *Villarreal v. State*, 576 S.W.2d 51, 56–57 (Tex.Crim.App. 1978), *cert. denied*, 444 U.S. 885, 100 S.Ct. 176, 62 L.Ed.2d 114 (1979); *Easter v. State*, 536 S.W.2d 223, 229 (Tex.Crim.App.1976). *See also* TEX.PENAL CODE ANN. § 38.05 (Vernon 1989).

■ Although an accused, as in the instant case, is charged by indictment and held to answer for doing a criminal act himself, if the evidence supports a charge on the law of parties, the court may charge on the law of parties and apply the law to the facts even if there is no such allegation in the indictment. *Williams v. State*, 676 S.W.2d 399, 401 (Tex.Crim.App.1984) and cases there cited.

■ When drafting its charge to the jury the trial court, in determining from the evidence whether one has participated as a party, may look to events before, during and after the commission of the crime. *Tarpley v. State*, 565 S.W.2d 525, 529 (Tex.Crim.App.1978); *Huff v. State*, 630 S.W.2d 909, 912 (Tex.App.—Amarillo 1982, no pet.). The court may rely on actions of the defendant which show an understanding and common design to do the prohibited act. *Beier v. State*, 687 S.W.2d 2, 4 (Tex.Crim.App.1985); *Medellin v. State*, 617 S.W.2d 229, 231 (Tex.Crim. App.1981). *See also Beardsley v. State*, 738 S.W.2d 681, 684 (Tex.Crim.App.1987); *Mayfield v. State*, 716 S.W.2d 509, 514 (Tex.Crim.App.1986). While an agreement of parties to act together in common design

seldom can be proved by direct evidence, reliance can be had on the actions of the parties showing, by either direct or circumstantial evidence, an understanding and common design to do a certain act. *Ex parte Prior*, 540 S.W.2d 723, 727–28 (Tex. Crim.App.1976); *Huff, supra* at 912. Participation in a criminal offense may be inferred from the circumstances. *Beardsley, supra; Freeman v. State*, 654 S.W.2d 450, 454 (Tex.Crim.App.1983); *Wygal v. State*, 555 S.W.2d 465, 469 (Tex.Crim.App.1977). *See also Phelps v. State*, 730 S.W.2d 198, 200 (Tex.App.—San Antonio 1987, no pet.).

*McCuin v. State*, 505 S.W.2d 827 (Tex. Crim.App.1974) remains a viable aid in determining when a cause should be submitted to the jury with a charge on the law of parties (nee principals) and when none is necessary or required. *See Huff, supra.*

Where the evidence introduced upon the trial of the cause shows the active participation in the offense by two or more persons, the trial court should first remove from consideration the acts and conduct of the non-defendant actor. Then, if the evidence of the conduct of the defendant then on trial would be sufficient, in and of itself, to sustain the conviction, no submission of the law of principals is required. The Durham rule governs in this situation.

*McCuin, supra*, at 830. *See and cf.* rule in *Oliver v. State*, 160 Tex.Crim. 222, 268 S.W.2d 467 (1954) where the evidence is not sufficient in and of itself, to sustain the conviction of a defendant as the primary actor.

In *Durham v. State*, 112 Tex.Crim. 395, 16 S.W.2d 1092, 1095 (1929) the court noted:

When the evidence shows that the accused on trial was a principal actor in the commission of the offense, no charge on principals would be necessary, although the proof may also disclose that in doing the criminal act another took an equal part.

*See Williams v. State*, 676 S.W.2d 399, 402 (Tex.Crim.App.1984).

■ Although not necessary if the evidence raises the theory that the defendant

did the act charged and the theory that another person participated with the defendant in doing that act it is not unusual for a charge to apply the law of parties to the facts by an instruction allowing the jury to convict on a finding beyond a reasonable doubt that the defendant either acting alone or acting with another as a party, did the act charged. Under such evidence the charge would not be improper. *Gilmore v. State*, 666 S.W.2d 136, 157 (Tex.App.—Amarillo 1983, pet. ref'd). *See also Brown v. State*, 716 S.W.2d 939 (Tex.Crim.App. 1986).

More recently in *Johnson v. State*, 739 S.W.2d 299, 305 (Tex.Crim.App.1987) it was held that although there may be sufficient evidence that the defendant committed the offense acting alone, if there is conflicting evidence that raised an issue whether the defendant was guilty under the law of parties as defined in § 7.02(a)(2) of the Penal Code then it is error for the trial court to refuse the defendant's request for a jury charge more explicitly applying the law of parties to the facts of the case, and that under the circumstances presented the error was harmful error.

 In the instant case the evidence was sufficient to show that the appellant committed the alleged offense acting alone, but there was also conflicting evidence raising the issue whether appellant was guilty under the law of parties. The trial court is charged with the duty of applying the law to the facts of the case. *See* TEX. CODE CRIM.PROC.ANN. art. 36.14 (Vernon Supp.1988). The proper submission of the law of parties is not dependent upon a request by the defendant as in *Johnson*. The appellant here, unlike *Johnson*, objected to the submission of the law of parties. Under the evidence we do not conclude the trial court erred in overruling the objection and submitting the law of parties.

It has also been frequently said that where the evidence of the defendant's conduct alone was sufficient to sustain the conviction any error in charging on the law of parties was harmless. *See Brown v. State, supra* at 946; *Govan v. State*, 682 S.W.2d 567, 571 (Tex.Crim.App.1985), *overruled on other grounds, Brown v. State*, 716 S.W.2d 939, 945 (Tex.Crim.App.1986); *Todd v. State*, 601 S.W.2d 718, 721 (Tex. Crim.App.1980); *Rodriguez v. State*, 653 S.W.2d 331, 334 (Tex.App.—San Antonio 1983, pet. ref'd). *Cf. Johnson, supra.*

Appellant's objection went alone to Paragraph III of the court's charge (abstract charge on the law of parties). If such objection meets the specificity requirements of TEX.CODE CRIM.PROC.ANN. art. 36.14 (Vernon Supp.1989), and there was error, then the first test of *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim. App.1984), comes into play. Reviewing the record as a whole as required by *Almanza* we do not conclude that the error, if any, in charging on the law of parties was calculated to injure the rights of the appellant. *Cf. Black v. State*, 739 S.W.2d 638, 641 (Tex. App.—Dallas 1987, no pet.). Appellant's fourth point of error is overruled.

In appellant's point of error five he contends the trial court erred in failing to grant his timely motion for a mistrial at the penalty stage of the trial. His contention is based on the State's cross-examination of a defense character witness who testified in terms of opinion, not reputation, and who was asked "Were you aware" questions. Appellant urges that such questions were equivalent to "Did you know" questions and were assertions of facts, and were highly improper, and now, at least on appeal, further urges the questions should have been framed in the terms of "Have you heard."

On cross-examination of Bill Tucker, appellant's R.O.T.C. high school instructor, the record reflects:

Q: You testified that in your opinion he is and was a peaceful and law abiding citizen, is that correct?

A: Yes, it is.[1]

---

1. The witness, Major Tucker, testified he had known appellant since 1983, had daily contact with him during a five day week at school in connection with the R.O.T.C. program for one year. The record shows:
 Q: Your opinion would be that he was or is a peaceful and law abiding person?

Q: Are you aware that in 1985,—he dated a girl by the name of Mary Rasnick?

A: Yes, I was aware of that.

Q: Were you aware that he would beat her repeatedly?

A: No, I was not.

Q: Were you aware when she broke up with him Dale set fire to her house at 5822 Windy Hill?

A: I heard that but I am not aware that it is true.

MR. RALLS (Defense counsel): Judge, we will object to the question.

THE COURT: Sustain the objection to those questions, counsel.

MR. RALLS: Ask those questions and those responses be restricted.

THE COURT: I will instruct the jury that the form of question is not permissible under the law.

\*　　\*　　\*　　\*　　\*　　\*

MR. RALLS: We would ask for mistrial.
THE COURT: Denied.

After a brief colloquy with counsel the court stated: "I will sustain the objection to it. I will instruct the jury they are not to consider those questions for any purpose."

Subsequently, when the State asked "Have you heard, Major Tucker . . ." appellant's second counsel objected on the ground that this "is not a general reputation witness." The jury was excused and a lengthy colloquy occurred. The judge insisted that the case law be followed, and the State not ask a question which asserted a fact. State's counsel insisted the witness had expressed a personal opinion and was subject to "Did you know" questions under the "new case law" and "new code." Appellant's counsel urged that the witness had "testified only to specific character traits and he is not a general reputation witness. A have you heard question is not proper here."

A: Yes, it would be.

In response to other questions on direct examination he expressed the opinion that appellant was an honest young man, that he exhibited concerns for other people in the community,

The trial court prevailed and the State was permitted to ask the witness several "Have you heard" questions before the jury as to the appellant being accused of forgery, larceny and being A.W.O.L. all while being in the United States Army, and being involved in a violent 1984 school fight.

On appeal State urges that it is fundamental that an objection to inadmissible evidence must be urged at first opportunity, and that this was not done and appellant has shown no reason for the delay. *See Armstrong v. State,* 718 S.W.2d 686, 699 (Tex.Crim.App.1985); *Stevens v. State,* 671 S.W.2d 517, 521 (Tex.Crim.App.1984); *Martinez v. State,* 437 S.W.2d 842, 847 (Tex.Crim.App.1969); *Henderson v. State,* 673 S.W.2d 662, 664 (Tex.App.—San Antonio 1984, no pet.). Appellant permitted the three "Were you aware" questions (upon which he bases his point of error) to be asked and answered without objection. His objection thereafter was to "the form of the question." That objection was sustained and the jury was instructed to disregard the form of the questions. The State further urges that even if the questions were improper any error was cured by the trial court's instruction. *Maxwell v. State,* 595 S.W.2d 126, 128 (Tex.Crim.App. 1980) and cases there cited. We need not however explore or rest our conclusion upon these propositions of law.

The past case law, as the trial court indicated, was clear. The general rule was that as a part of the cross-examination of a character witness testifying in terms of reputation the State was permitted to ask if he has heard of a specific act of misconduct. However, the State should not ask whether the witness had personal knowledge of the act, nor should the question be framed as to imply that the act had actually been committed. The State, as a prerequisite for asking the question, must have had a good faith belief that the act actually occurred. *See Brown v. State,* 477 S.W.2d

that he exhibited better than average leadership skills, and the opinion appellant would not engage in vicious or injurious habits. Tucker was not asked any reputation questions on direct examination.

617, 619–20 (Tex.Crim.App.1972) citing *Hart v. State,* 447 S.W.2d 944 (Tex.Crim. App.1970). *See also Moffett v. State,* 555 S.W.2d 437, 443 (Tex.Crim.App.1977); *Maxwell, supra; Green v. State,* 682 S.W.2d 271, 296 (Tex.Crim.App.1984), *cert. denied,* 470 U.S. 1034, 105 S.Ct. 1407, 84 L.Ed.2d 794 (1985); *Evans v. State,* 732 S.W.2d 703, 708 (Tex.App.—Fort Worth 1987), *vacated on other grounds,* 757 S.W.2d 759 (Tex. Crim.App.1988) (State must limit its impeachment by "have you heard questions" to specific instances of conduct inconsistent with the character trait to which the witness testified).

Since September 1, 1986, and applicable to this January, 1988 trial is TEX.R.CRIM. EVID. 405(a), which provides:

> (a) Reputation or Opinion. In all cases in which evidence of character or trait of character of a person is admissible, proof may be made by testimony as to reputation *or by testimony in the form of an opinion.* Provided however that in order to be competent to testify concerning the character or trait of character of the accused, a witness must, prior to the date of the offense, have been substantially familiar with the reputation of the accused. *In all cases where testimony is admitted under this rule, on cross-examination inquiry is allowable into relevant specific instances of conduct.* (emphasis supplied)

The language of the rule is substantially identical to that of Federal Rule 405 from which it was spawned, except TEX.R. CRIM.EVID. 405(a) contains an unusual provision relating to the qualifications of character witnesses—the "Provided however ..." sentence. Following the lead of the federal rule, Rule 405(a) makes a break with the past Texas practice regarding the use of opinion testimony. In situations where reputation formerly was the only permissible technique for proof of charac-

ter,[2] the proponent will now be permitted also to offer opinion evidence.

The now permissible cross-examination of character witnesses is well explained in 33 S. GOODE, O. WELLBORN & M. SHARLOT, GUIDE TO THE TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL § 405.2 (Texas Practice 1988). Because of its importance in this somewhat confusing area of trial practice we take the liberty of quoting from this authoritative source (eliminating the footnotes):

> **Cross-examination of character witnesses.** Rule 405(a) continues the established rule that character witnesses who have testified, whether in terms of reputation or now opinion, may be cross-examined by the opposing party concerning relevant specific instances of conduct. "Relevant" here refers to the need that the conduct inquired of involve the character trait to which the witness' testimony was directed. This technique is normally employed in the cross-examination of good-character witnesses, although it may also be employed with respect to those who have testified to a person's bad character. This potentially devastating technique of exposing the trier of fact to specific acts which reflect on the defendant's character is permitted despite the general prohibition on the use of such evidence directly against the defendant. The theoretical justification is that the questions are designed to test the credibility of the witness rather than to strike at the defendant over the witness's shoulder. The theory is that conduct inconsistent with the relevant character trait is likely to have been the subject of discussion in the community and if the witness has not heard such discussions his report as to reputation is less worthy of belief. Also, if the witness has heard of these matters her testimony that the defendant's reputation is nonetheless good may raise a question

---

**2.** Prior to said Rule 405(a) only evidence of reputation was admissible to prove character; personal opinion was not admissible. *See Green v. State,* 679 S.W.2d 516, 517 (Tex.Crim. App.1984); *Beecham v. State,* 580 S.W.2d 588, 590 (Tex.Crim.App.1979). A character witness could only testify about what he had heard, not about what he knew or opined. *See Pemberton v. State,* 601 S.W.2d 333, 337 (Tex.Crim.App. 1979); *Brown v. State,* 477 S.W.2d 617, 620 (Tex.Crim.App.1972).

with the trier of fact as to the criteria employed by the relevant community in reaching such a collective conclusion. It must be clear, however, that the defendant's witness did in fact testify to the character of the defendant before he may be subjected to this form of cross-examination. The prosecution, in its eagerness to inquire about specific acts of the accused's misconduct, is not to try to convert ·the accused's witnesses into character witnesses through its own examination.

Because of the obvious dangers of unfair prejudice inherent in this form of cross-examination some limitations have been placed on the technique. The examiner is supposed to have some basis for a good faith belief that the event inquired of has some basis in fact, or, presumably, that rumours regarding such behavior were extant in the community. Moreover, the State has not been permitted to frame the question so as to imply that the act was actually committed. Most importantly, it has been traditionally required that the questions be put in the form "Have you heard * * * ?" and not "Did you know * * *?" The fear has been that questions that imply the act actually has been committed have the effect, if not the purpose, of prejudicing the trier of fact with a collateral offense of which the defendant may not have been charged or convicted.

The drafters of the federal rule, which is essentially the same as the new Texas rule, decided that the difference between such questions has "slight if any practical significance," and the Texas drafters apparently agreed. This type of cross-examination under Rule 405(a) does not discriminate between character witnesses testifying to reputation and those testifying to opinion, thus arguably permitting "Did you know?" and "Have you heard" questions to be asked of both. Such a dramatic change in our traditional practice is open to question as a matter of logic. The reputation witness purportedly bases her testimony on hearsay in the community. Her personal knowledge or lack thereof concerning a specific act inconsistent with the character trait to which she has testified would not seem to affect her credibility as a reporter of the community's views. Similarly, the opinion witness claims to testify from personal knowledge of the subject. Her personal views of the subject's character are presumably unaffected by rumours concerning the subject's character; certainly not if she has not heard such discussions. The criteria employed by an opinion witness to reach a conclusion as to the subject's good character might be adversely affected by her refusal to change that opinion in the face of inquiry concerning prior misconduct. Moreover, such pointed examination would seem to threaten the general prohibition on the use of specific act evidence. Although logically the best rule would be to continue to restrict cross-examination of reputation witnesses to "have you heard" and permitting only "did you know" to be used in the cross-examination of opinion witnesses, this is not required by Rule 405. It is certainly to be hoped that reversal will not be predicated on the niceties of the form in which the question is presented.

▬ The witness in the instant case was an opinion witness and it was proper under said Rule 405(a) for the State, on cross-examination, to have asked the complained of "were you aware" questions. There is nothing to suggest that the prosecutor was acting in bad faith or had no basis for the questions. Appellant's fifth point of error is overruled. *See Lancaster v. State,* 754 S.W.2d 493, 495–96 (Tex.App.—Dallas 1988, pet. ref'd).

In his last point of error appellant contends the trial court erred in overruling his timely filed motion for new trial based on jury misconduct—the receipt of other evidence.

In his motion for new trial appellant alleged that during deliberations (1) a juror produced a television schedule from the date of the alleged murder saying the program appellant claimed he was watching was not on said schedule, and (2) that the same juror, apparently the foreman, stated

that he had driven between geographical points mentioned in the evidence and that he had some doubts about time and distance. During the hearing on the motion for new trial it developed that apparently the same juror also reported to the other jurors that he had tried to pull an electrical cord from a clock radio and that it couldn't physically be done. After hearing the testimony of five jurors called by the appellant and affidavits from three of the five witnesses, and eight affidavits of jurors offered by the State including four from the five jurors testifying, the trial court overruled the said motion.

TEX.R.APP.P. 30 reads in part:

(b) **Grounds.** A new trial shall be granted an accused for the following reasons:

\* \* \* \* \* \*

(7) Where after retiring to deliberate the jury has received other evidence; ...

Rule 30(b) supersedes in part former article 40.03, § 7 of the Code of Criminal Procedure. The language quoted above is the same as found in the former statute.

■ Under the former statute in order for a new trial to be mandated because the jury received "other evidence" during deliberations, a two-prong test has been established requiring that the evidence must have been (1) "received" by the jury and it must be (2) adverse or detrimental to the defendant. *Bennett v. State*, 742 S.W.2d 664, 676 (Tex.Crim.App.1987), *vacated,* ——— U.S. ———, 108 S.Ct. 2815, 100 L.Ed.2d 917 (1988); *Garza v. State*, 630 S.W.2d 272, 274 (Tex.Crim.App.1981); *Eckert v. State*, 623 S.W.2d 359, 364 (Tex.Crim.App.1981), *overruled on other grounds, Reed v. State*, 744 S.W.2d 112, 125 n. 10 (Tex.Crim.App.1988); *Stephenson v. State*, 571 S.W.2d 174, 176 (Tex.Crim.App.1978); 25 TEX.JUR.3d *Criminal Law* § 3503 (1983). It is the character of the evidence that controls the determination whether "other evidence" received by the jury was adverse to the accused. *Alexander v. State*, 610 S.W.2d 750, 753 (Tex.Crim.App.1980); *Garza, supra.*

■ The burden of proof to establish the two prong test is upon the appellant. *Romo v. State*, 631 S.W.2d 504, 506 (Tex. Crim.App.1982); 25 TEX.JUR.3d *Criminal Law* § 3559 (1983). When the burden has been sustained it has been said that the court will not speculate on the probable effect on the jury or the question of injury. *Stephenson, supra; Garza, supra;* 25 TEX.JUR.3d *Criminal Law* § 3504 (1983). *Cf. now* TEX.R.APP.P. 81(b)(2).

It has been said that a passing remark or mere mention of a matter does not constitute receipt of "other evidence" particularly where followed by an admonishment or instruction to disregard or not to consider or by other corrective action, and where there is no further discussion of the matter. *Heredia v. State*, 528 S.W.2d 847, 852 (Tex.Crim.App.1975), *overruled on other grounds, Sneed v. State*, 670 S.W.2d 262 (Tex.Crim.App.1984); *Stephenson, supra* at 176. Further if the "other evidence" is not detrimental to the defendant a new trial is not required. *See Aguirre v. State*, 683 S.W.2d 502, 514 (Tex.App.—San Antonio 1984, pet. ref'd); *Stephenson, supra* at 176. In *Collier v. State*, 164 Tex.Crim. 91, 297 S.W.2d 160, 162 (Tex.Crim.App.1956) it was held that the "other evidence" must be such that reason and common sense can see that it was harmful to the accused.

■ Issues of fact as to jury misconduct raised at a hearing on a motion for new trial are for the determination of the trial court, *Jones v. State*, 596 S.W.2d 134, 138 (Tex.Crim.App.1980); *Hartman v. State*, 507 S.W.2d 557, 560 (Tex.Crim.App. 1974), and where there is conflicting evidence there is no abuse of discretion where the motion for new trial is overruled. *Jones, supra; McCartney v. State*, 542 S.W.2d 156, 162 (Tex.Crim.App.1976).

With this background we consider appellant's contentions.

In the instant case the appellant testified that on the morning of the alleged offense the deceased came to the house where he was staying with Elena Moore. He related, inter alia, that the three of them began to smoke marihuana joints and to drink liquor, and began to joke about sex while

watching television. He stated there was "a talk show on cable channel, one of the later channels and they were talking about open marriage, sex and two on one sex, orgy sex, something." He did not give the name of the program, the cable channel name or number or the exact time. The reference to the television show was only made incidentally, and was undisputed. Appellant testified the threesome continued to drink and joke about sex and that he stated he could "handle" or "go the distance" with both women; that they all went to the master bedroom where he had sex with both women. He related that he then took a shower and when he returned to the bedroom Elena had strangled the deceased with a jump rope. The fact that the television set was on that fateful morning was an undisputed issue during the trial. Elena Moore also testified she was watching television when the appellant and the deceased went to the master bedroom.

The evidence offered at the hearing on the motion for new trial revealed that a juror, who apparently later was elected foreman, produced a "piece of paper," a copy of a television schedule on which he said he couldn't find the program the appellant has said he was watching on the morning in question, or that such program wasn't on the said schedule. One juror stated the schedule was not passed around. Another testified it was passed around to three or four jurors who returned it without comment or response. It was established by the testimony and affidavits that one juror responded by pointing out that the jury had no idea what was on television that day, no idea what cable channels were available, and did not know whether a satellite dish was being used. Immediately thereafter the "foreman" put the schedule in his pocket and admonished and instructed the jurors that it was not evidence and should not be considered. Thereafter, it was not again mentioned or discussed during deliberations.

The record reflects the incident occurred before the election of a foreman and while the jurors were talking in groups. Alvin Daniels, who made the discrediting response, testified he was in the restroom smoking when he heard the comment about the television schedule. Another juror, Thomas Keeter, stated in his affidavit that if there was a discussion about a television schedule he was not present at the time.

None of the nine jurors who testified or whose affidavits were introduced indicated they had read or studied the television schedule. Only one "glanced" at it. Some saw the "piece of paper" and some did not. One juror described the incident as having occurred "very briefly," a matter of a few minutes. Two jurors considered the matter "only a passing remark."

The Court of Criminal Appeals in *Stephenson v. State*, 571 S.W.2d 174, 176 (Tex.Crim.App.1978), in a discussion of whether the first prong of the test had been met, observed that "a new trial for receipt of other evidence is not required every time something is mentioned among the jurors that is not supported by evidence" and that in a particular case it may be a question of degree. *See Eckert v. State*, 623 S.W.2d 359, 364 (Tex.Crim.App. 1981), *overruled on other grounds, Reed v. State*, 744 S.W.2d 112, 125 (Tex.Crim. App.1988). The court in warning against an overly broad application of then Article 40.03(7) stated that a mere "passing remark" would not constitute a receipt of other evidence. And this is particularly true where the remark is followed by corrective action. The effect of the corrective instruction by a member of the jury or the court is similar to the corrective action of an instruction to disregard evidence improperly introduced at trial. *Eckert, supra*, at 364; *Broussard v. State*, 505 S.W.2d 282, 285 (Tex.Crim.App.1974); *Howard v. State*, 484 S.W.2d 903, 905 (Tex. Crim.App.1972). *Cf. Thompson v. State*, 486 S.W.2d 343, 344 (Tex.Crim.App.1972). *See also Ward v. State*, 520 S.W.2d 395, 396–97 (Tex.Crim.App.1975); *Brown v. State*, 516 S.W.2d 145, 146 (Tex.Crim.App. 1974).

In *Broussard, supra*, a juror related his speculation about the basis and validity of a defense witness' testimony based on the personal observation of the scene of the crime by that juror. There the court

wrote: "In view of the fact that there was no discussion of the remark and the fact that the jurors were promptly instructed not to consider it, we perceive no error." 505 S.W.2d at 285.

Following *Broussard* the court in *Eckert, supra,* stated: "Such a passing remark, followed by rejection of the other jurors, does not constitute *'receipt'* of other evidence so as to require a new trial." 623 S.W.2d at 365 (emphasis in original). *See also Kashfi v. State,* 703 S.W.2d 312, 314–15 (Tex.App.—Waco 1985, pet. ref'd); *Gaona v. State,* 733 S.W.2d 611, 619 (Tex. App.—Corpus Christi 1987, pet. ref'd).

In the instant case the production of an unidentified copy of a television schedule was accompanied by a comment that the "foreman" couldn't find on such schedule the program the appellant said he was watching or that the schedule did not reflect such program. This was followed by the discrediting and rejecting response by one juror, the withdrawal of the television schedule and an instruction by the "foreman" himself that the same was not evidence and could not be considered. No further mention or discussion of the matter occurred.

■ At the hearing on the motion for new trial the trial judge was the trier of the facts, the judge of the credibility of the witnesses and the weight to be given to their testimony. The trial judge is free to believe the witness' testimony as to the extent of the discussion and the absence of improper conduct, etc., and to disbelieve and reject all or part of the testimony of the other witnesses. *Beck v. State,* 573 S.W.2d 786, 791 (Tex.Crim.App.1978); *Carrillo v. State,* 566 S.W.2d 902, 913–14 (Tex. Crim.App.1978); *Daniel v. State,* 486 S.W.2d 944, 946 (Tex.Crim.App.1972), *cert. denied,* 410 U.S. 958, 93 S.Ct. 1433, 35 L.Ed.2d 692 (1973); 25 TEX.JUR.3d *Criminal Law* § 3571 (1983). These principles are applicable where there is conflicting evidence on the issue of jury misconduct such as whether the jury received new evidence during its deliberations. *Appleman v. State,* 531 S.W.2d 806, 810 (Tex. Crim.App.1976) (opinion on rehearing).

■ Given the particular circumstances of the instant case we do not conclude that the "other evidence" was received. *Kashfi, supra; Gaona, supra.* We do not find that the trial court abused its discretion regarding this contention. *Jones v. State,* 596 S.W.2d 134, 138 (Tex.Crim.App.1980).

■ At the hearing on the motion for new trial it was established that during deliberations that the foreman had mentioned that he had driven from the house in question to the field where the body was found, and expressed a concern about time and distance. It was related that it was only a passing remark, and that someone admonished the other jurors it was not to be considered and that there was no further mention or discussion. Two jurors related they failed to see relevance in the statements, and one stated they "had no bearing on anything we were deciding in there anyway." One testified the statements did not conflict with appellant's version of the events.

In *Shivers v. State,* 756 S.W.2d 442, 443–44 (Tex.App.—Houston [1st Dist.] 1988, no pet.), it was held that a jury foreman's telling other jurors that he had driven past the scene of the crime to determine if the witness could have identified the defendant from the witness' home, *without telling them what he saw,* would not constitute other evidence adverse to the defendant so as to mandate the granting of a new trial.

As earlier noted in *Broussard, supra,* a juror related his speculation about the basis and validity of a defense witness' testimony based on his personal observations at the scene of the crime. As here, there was no discussion of the remark and the jury was promptly instructed not to consider the remark. No error was perceived there nor do we perceive one here. *See also Aguirre v. State,* 683 S.W.2d 502, 514 (Tex.App.—San Antonio 1984, pet. ref'd) (viewing the scene of an offense does not necessarily cause reversible error); *Williams v. State,* 343 S.W.2d 263, 265–66 (Tex.Crim.App. 1961); 25 TEX.JUR.3d *Criminal Law* § 3513 (1983).

Finding, for the reasons discussed above, that the "other evidence" was not received, we do not conclude the court abused its discretion in overruling the motion for new trial on this ground. *Jones v. State, supra.*

With regard to the third matter it is observed that the foreman had stated that he had tried to pull an electrical cord from a radio or clock radio and that it physically couldn't be done. At this point one juror correctly stated that the medical examiner had testified that the electrical cord found around the deceased's neck had been cut, not pulled out. The jurors were admonished not to consider the remark; and it was not further mentioned, discussed or considered. No error is presented for the reasons stated above. Further it appears that this last contention was not properly before the court. It was not alleged in the sworn motion for new trial nor supported by affidavit. Each separate allegation in the motion must be supported by affidavit. *Marquez v. State,* 356 S.W.2d 797, 799 (Tex.Crim.App.1962); 25 TEX. JUR.3d *Criminal Law* § 3550 (1983). *See also Trout v. State,* 702 S.W.2d 618, 620 (Tex.Crim.App.1985); *Bearden v. State,* 648 S.W.2d 688, 690 (Tex.Crim.App.1983).

The trial court did not abuse its discretion in overruling the motion for new trial. *Jones v. State, supra.*

The judgment is affirmed.