George Anthony AVALOS, Appellant,

v.

The STATE of Texas, Appellee.

No. C14–90–01029–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

March 18, 1993.

Floyd W. Freed, III, Houston, for appellant.

Rikke Burke, Houston, for appellee.

Before ROBERTSON, CANNON and BOWERS, JJ.

## OPINION

BOWERS, Justice.

Appellant entered a plea of not guilty before a jury to the offense of aggravated sexual assault. TEX.PENAL CODE ANN. § 22.02. He was convicted and the court assessed punishment, enhanced under TEX.PENAL CODE ANN. § 12.42, at imprisonment for 28 years. We affirm.

In his sole point of error, appellant argues the trial court abused its discretion by denying his motion for new trial based on jury misconduct, the receipt of other evidence.

Appellant's motion for new trial alleged that after retiring for deliberations, two jury members commented to other jurors that a teardrop tattoo below appellant's left eye indicated appellant had been to prison; that tattoos on appellant's hands indicated prison gang affiliation; and that a black leather jacket admitted into evidence was evidence of appellant's street gang affiliation.

A few minutes after the jury began deliberating, the jury took a vote on appellant's guilt or innocence of the lesser included offense of sexual assault. The jury unanimously voted "guilty." The jury then voted to determine if appellant was guilty of aggravated sexual assault. Seven members voted "guilty" and four members voted "not guilty." The jury began deliberating about the aggravating act; whether appellant used a knife during commission of the offense. After several votes, the jury found appellant guilty of aggravated sexual assault.

At the conclusion of the proceedings, the jury talked with the judge and the attorneys for both sides. Defense counsel informed the jurors that the complainant had a bad reputation. Mrs. Dill, a member of the jury, became upset when she heard this comment and asked another member of the jury if he thought the jurors had done the wrong thing by convicting appellant. Mrs. Dill was also concerned that appellant would have access to the names and addresses of the jurors.

Another member of the jury, Mrs. Smith, has a daughter the same age as appellant. After the verdict was read, Mrs. Smith told the prosecutor she would not have wanted to be on the jury if she had known appellant's age.

Both Mrs. Dill and Mrs. Smith were upset and emotional during deliberations. They were concerned appellant would receive a greater sentence if he were convicted of aggravated sexual assault instead of sexual assault.

After thinking about the verdict over the weekend, Mrs. Smith called defense counsel. After talking to Mrs. Smith, defense counsel filed a motion for new trial on the basis that the jury received other evidence after retiring to deliberate.

During the hearing on appellant's motion for new trial, the court heard testimony from four jurors. The jury foreman, Andy Weber, a drug and alcohol abuse counselor,

testified that during the trial he noticed appellant's teardrop tattoo and commented that from his experience the tattoo indicated the person had been in prison. Weber testified that he made the comment while going to and from the court room, before deliberations began.

Weber further testified that when the tattoo was mentioned, another jury member said the jury could not consider the tattoo. Weber also testified that the tattoo was mentioned again during deliberations when someone said "maybe it's a mole." Weber told the jury that they could not talk about the tattoo; that it did not matter what the mark was; and that because the jury did not know if appellant had ever been previously convicted, the jury could not consider the tattoo.

Weber also testified he commented about the tattoos on appellant's hands. Weber said he told the other jury members that he had heard that sometimes people who go to TDC or serve time put dots on their hands to represent their sentence. He told the jury that he did not know if this was true or not.

Weber testified that during deliberations, another jury member commented about the jacket admitted into evidence. The jury member said he recognized the jacket as being similar to jackets worn by gang members. Appellant contends that this reference to gang membership inflamed the jury's opinion about appellant's bad character.

Weber further testified that Carol Smith, a juror, was upset and crying during deliberations about the aggravated assault aspect of the charge, and that she kept saying she had a daughter about the same age as appellant and that appellant was "just a baby."

Carol Smith testified that the tattoos or their significance was discussed about fifteen times during deliberations. She said the comments about the tattoos and jacket influenced her decision and the verdict. She also testified she voted "guilty" on the aggravation question after the court reporter read back to the jury certain testimony about the knife. Mrs. Smith further

testified that she was extremely concerned about the sentence appellant would receive if he was found guilty of an aggravated offense.

Joyce Dill testified that the discussion about the tattoos and the assertion that appellant had a prior criminal history affected her deliberations. She also testified she was concerned about appellant having access to the jury list of names and addresses.

David Bradley testified that he made the comment about the jacket being similar to jackets worn by members of gangs. He testified that other jurors would admonish each other not to discuss things not admitted in evidence. He further testified that some jurors were questioning if the mark under appellant's eye was a mole or a tattoo. Mr. Bradley testified that only the evidence admitted during trial was considered by the jury. He also testified that after the verdict, the jurors were told about the complainant's bad reputation and that Mrs. Dill asked him if the jury had done the right thing in convicting appellant. He testified that the deliberations focused on the aggravated nature of the assault and that the jury had no problem finding appellant "guilty" of assault.

■ A new trial shall be granted "where after retiring to deliberate the jury has received other evidence." TEX.R.APP.P. 30(b)(7). Denial of a motion for new trial is within the sound discretion of the trial court and will not be overturned absent a showing of an abuse of discretion. *Tollett v. State*, 799 S.W.2d 256, 259 (Tex.Crim. App.1990).

■ Appellant must prove that other evidence was received by the jury and that the evidence was adverse or detrimental to appellant. A passing remark or mere mention of a matter does not constitute receipt of other evidence. If the other evidence is not detrimental to appellant, a new trial is not required. *Bratcher v. State*, 771 S.W.2d 175, 188 (Tex.App.—San Antonio 1989, no writ).

The jury only took a few minutes to find appellant guilty of sexual assault. None of

the jurors questioned appellant's guilt. The jury had a more difficult time resolving whether appellant used a knife during the sexual assault. The jury asked the court reporter to read back testimony concerning appellant's use of a knife, and the jury immediately reached a verdict of "guilty" of aggravated sexual assault. . .

At the hearing on the motion for new trial, four jurors testified. Two jurors testified that the tattoos and jacket were not discussed after the initial vote to determine appellant's guilt or innocence was taken. The witnesses further testified that the tattoos and jacket had no bearing on the verdict.

Mrs. Dill and Mrs. Smith testified that comments about the tattoos were made throughout deliberations and that admonishments by other jurors not to consider these items were ignored. Clearly, the four witnesses presented conflicting evidence.

■ "[A] passing remark followed by rejection of the other jurors does not constitute *'receipt'* of other evidence so as to require a new trial." *Id.* at 190. The trial judge is the judge of the credibility of the witnesses and is free to believe a witness' testimony as to the extent of the discussion and the absence of improper conduct, and free to disbelieve and reject all or part of the testimony of the other witnesses. *Id.* "Issues of fact as to jury misconduct raised at a hearing on a motion for new trial are for the determination of the trial court ... and where there is conflicting evidence there is no abuse of discretion where the motion for the new trial is overruled." *Id.* at 188. The trial court did not abuse its discretion in overruling appellant's motion for new trial. We overrule appellant's sole point of error.

Accordingly, we affirm the judgment of the trial court.