TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-02-00315-CR







Christopher Radon Rolig, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT


NO. 9014158, HONORABLE CHARLES F. CAMPBELL JR., JUDGE PRESIDING







M E M O R A N D U M O P I N I O N



A jury found appellant Christopher Radon Rolig guilty of sexual assault and theft. 
Tex. Pen. Code Ann. §§ 22.011, 31.03 (West 2003). The jury assessed punishment for the sexual
assault at imprisonment for five years, while the court assessed punishment for the theft at
imprisonment for two years. Imposition of sentence was suspended and Rolig was placed on
community supervision. He now urges that the evidence is factually insufficient to sustain the
convictions and that the court erred by overruling his motion for new trial. We will overrule these
contentions and affirm the convictions.


State's Evidence
Jane Smith testified that she and her friend Linda Freitag went to an Austin restaurant
on the night of September 4, 1999. (1) They did not eat at the restaurant. Instead, they drank and
danced with a group of people they met there. When the restaurant closed, Smith, Freitag, and the
others decided to go to Polly Esther's, a club in the downtown warehouse district. Freitag, who was
driving, dropped Smith off in front of the club, then left to find a parking place. It was agreed that
Freitag and the others would rejoin Smith in Polly Esther's. 

Smith testified that she entered Polly Esther's and ordered a drink in the downstairs
dance area. The club was crowded, and she began to dance with other patrons. She continued to
drink and became intoxicated to the extent that she began "blacking out." At some point, Rolig
approached Smith, but she rebuffed him. Later, not having seen Freitag or the others in her party,
Smith decided to leave Polly Esther's and go to a nearby restaurant where she believed they might
be. Before Smith reached the door of the club, Rolig walked up to her, told her she was drunk,
grabbed her wallet from her hand, and walked away. Smith pursued Rolig across the crowded dance
floor, demanding that he return her wallet. Rolig left the club by a side entrance and walked across
the street to a parking lot, still followed by Smith. Smith told Rolig that her friends were waiting
for her and she wanted her wallet. Rolig told Smith that her friends had left, that she was too drunk,
and that he would take her home. Rolig took Smith by the elbow and began to walk her down the
street, ostensibly to his car.

Rolig lived in a downtown apartment complex several blocks from Polly Esther's. 
Smith's next memory was of being in the courtyard of this complex. Rolig took Smith to his
apartment. Her memory of what happened there was fragmentary. She remembered encountering
a male friend of Rolig, who had two women with him. Although it crossed her mind to say
something to them, she decided not to because the man was Rolig's friend. When Smith and Rolig
were alone in the apartment, he began to kiss and fondle her. Somehow, they ended up in the
bedroom. Rolig pulled Smith's dress above her head, touched her breasts, and penetrated her vagina
with his fingers. He began to lick her genitals. She kicked and screamed. Rolig then forced his
penis into Smith's mouth.

Smith became nauseated and Rolig took her to the bathroom, where she vomited. 
After Smith vomited, Rolig left her alone in the bedroom. Smith used the telephone to call Freitag's
number and leave a message. In the message, Smith told Freitag that a man had taken her wallet and
that she was in his apartment. She did not say that she had been abducted or assaulted. Smith asked
Freitag to use her caller ID to find where Smith was. Smith next remembered sitting on the couch
in Rolig's living room and speaking to a man who was Rolig's friend. She told the man she had
been sick, but did not tell him that she had been sexually assaulted by Rolig. 

The telephone rang several times. At first, Rolig picked up the receiver and
immediately hung up. Finally, he answered and Smith heard him tell the caller, "She's not here. 
You have the wrong number." Smith testified that she thought then that she was going to die. She
told Rolig that if he would take her to her friend's house to get her purse and keys, she would have
sex with him. Rolig agreed to this and told Smith to call her friend and tell her that she was safe. 
With Rolig watching her, Smith called Freitag and told her that "everything was okay." Smith and
Rolig then got into his car and, following her directions, he drove her to Freitag's house. Smith told
Rolig she would go inside to get her purse, but first he must return her wallet. After recovering her
wallet and driver's license, Smith ran into Freitag's house.

Smith testified that she had been taking the drug Prozac for many years for
depression. Doctors had warned her not to drink alcohol while taking the drug. She claimed that
she was familiar with the effect of the drug and denied ever suffering from delusions. She
acknowledged that in her original report to the police, she said that she had been "forced into a car
and almost raped."

Linda Freitag testified that when she and her companions entered Polly Esther's, they
went to the upstairs balcony area. Freitag could see Smith on the dance floor below, but the club was
crowded and noisy, and she could not get Smith's attention. Later, when Freitag was ready to leave
the club, Smith had disappeared. Concerned, Freitag attempted to find Smith, even having her
paged. After a futile search for Smith, Freitag drove home. There, she discovered Smith's telephone
message. She repeatedly called the number shown on her caller ID. Someone would lift the
receiver, but hang up without speaking. On about the sixth call, a man answered and Freitag asked
to speak with Smith. The man told her she had the wrong number. Freitag then called the police to
report what had happened. After about thirty minutes, Smith called Freitag and told her that "he"
was going to bring her to Freitag's house. She described Smith's manner of speaking as "unusual." 
Freitag did not see the person who drove Smith to her house. Smith told her what had happened to
her, and Freitag convinced her to call the police.

Amy Murphy and Tammy Ellis were residents of San Antonio who spent the 1999
Labor Day weekend in Austin. On the night of September 4, they went to Polly Esther's where they
met Rolig and his friend, Stephen St. James. They did not spend much time with Rolig, but danced
for at least an hour with St. James. About 2:00 a.m., they left Polly Esther's with St. James and went
to a pizza restaurant. After eating, the women accepted St. James's offer to drive them to the motel
where they were staying. As it happened, St. James's car was parked at Rolig's apartment complex. 
They went to Rolig's apartment, where St. James used the bathroom and got his keys. The two
women stood inside the doorway. A young woman was sitting on the couch; Murphy described her
as "intoxicated or very out of it." Asked if she was all right, the woman told Murphy and Ellis that
she was, but that she had been sick. Murphy asked Rolig to let the woman use his telephone, and
he did so. Murphy, Ellis, and St. James were in Rolig's apartment for only a few minutes.

Austin Police Officer Paula Belville took a videotaped statement from Rolig, a
transcript of which was introduced in evidence. According to Rolig's account, his encounter with
Smith on the night in question began when she approached him at Polly Esther's. They went outside
to talk, and she agreed to go to his apartment. There, they sat on the couch but Smith became ill. 
Rolig took her to the bathroom, where she vomited. After they returned to the couch, St. James,
Murphy, and Ellis arrived, then soon left. Rolig said he went outside to open the security gate for
St. James. When he returned to his apartment, he and Smith went to the bedroom, sat on the edge
of his bed, and began to kiss. She offered no resistence as he removed her clothing. When both
were naked, Rolig's telephone began to ring. Smith told him that the caller was probably her friend. 
Rolig admitted telling the caller that Smith was not there. When the phone rang for the third time,
Smith answered and told her friend that everything was fine and not to worry. She returned to
Rolig's bed and he briefly performed cunnilingus. Smith then told Rolig that she wanted to go
home.

In his statement, Rolig denied penetrating Smith with his fingers or forcing her to
fellate him. He also denied taking Smith's wallet, but acknowledged having her driver's license at
some point during the evening. 


Defense Evidence


Stephen St. James testified that he went to Polly Esther's with Rolig on the night of
September 4. There he met and befriended Murphy and Ellis. According to St. James, when he and
the two women went to Rolig's apartment complex, Rolig had to leave his apartment to open the
security gate both when they arrived and when they departed. He heard the woman sitting on the
couch say she had been sick but was feeling better. He said the woman did not appear to be injured,
upset, or intoxicated.

 Dr. Richard Coons, a psychiatrist, testified that he had examined Smith's medical
records but had not spoken to her. He said her records indicated that she had been diagnosed with
depression, an "alcohol issue," and cannabis dependence, and that she had been prescribed Prozac. 
The doctor testified that alcohol, depression, and Prozac can each have an adverse affect on memory. 
He added that the use of Prozac can result in the inability to distinguish dreams from reality, and
cause mood swings, paranoia, and sexual promiscuity. (Later, during cross-examination, Coons
acknowledged that Prozac had a list of side effects "as long as your leg," that most of these side
effects were experienced by only a small percentage of persons taking the drug, and that depending
on the person, Prozac could either increase or decrease the libido.) Coons said that Smith's records
also reflected a history of "bad relationships, bad experiences" with others. He testified that such
experiences can affect how a person perceives and remembers events. 

Coons also discussed what he called "confabulation." According to the doctor, if a
person experiences blackouts or memory loss as a result of intoxication, she may confabulate or "fill
in the gaps in a sort of faulty memory." In response to a hypothetical question based on the facts of
this case, Coons testified that in his opinion, the hypothetical woman might believe that she had been
sexually assaulted when in fact she had not.


Factual Sufficiency


The indictment alleged three counts of sexual assault: penetration of Smith's sexual
organ by Rolig's finger, penetration of her mouth by his penis, and contact of her sexual organ by
his mouth. Id. § 22.011(a)(1)(A), (B), (C). A fourth count alleged that Rolig stole Smith's wallet
and credit card from her person. Id. § 31.03(a), (e)(4)(B). The jury acquitted Rolig of the first two
counts of sexual assault, but found him guilty of the third sexual assault count and of theft. He does
not challenge the legal sufficiency of the evidence, but urges that the evidence is factually
insufficient to sustain the guilty verdicts.

A factual sufficiency review asks whether a neutral review of all the evidence, both
for and against the finding of guilt, demonstrates that the proof of guilt is so obviously weak as to
undermine confidence in the jury's determination or that the proof of guilt, although adequate if
taken alone, is greatly outweighed by contrary proof. See Johnson v. State, 23 S.W.3d 1, 11 (Tex.
Crim. App. 2000). A verdict may be set aside for factual insufficiency only if a finding of guilt
beyond a reasonable doubt is clearly wrong and unjust. See Clewis v. State, 922 S.W.2d 126, 129
(Tex. Crim. App. 1996); Stone v. State, 823 S.W.2d 375, 381 (Tex. App.--Austin 1992, pet. ref'd,
untimely filed).

Rolig makes the following arguments in support of his contention that the evidence
in this case is factually insufficient:


 Smith was, by her own admission, intoxicated to the point that she was
experiencing blackouts. Her ability to perceive and remember events was clearly
impaired.


 Smith's perceptions were also distorted by her history of depression and bad
relationships.


 Smith's trial testimony and her statements to the police contained inconsistencies
that reflect her impaired memory and suggest that she was engaged in the
confabulation described by Dr. Coons.


 Smith made no outcry to Murphy and Ellis while they were in Rolig's apartment. 
She told them she had been ill, but she did not tell them either that she had been
abducted or sexually assaulted. She did not tell them that her wallet had been taken. 
Murphy persuaded Rolig to let Smith use his telephone, showing that there was
someone in the apartment willing to help her if asked.


 Smith made no outcry at Polly Esther's when Rolig allegedly took her wallet, even
though the club was crowded with people.


 There was no physical evidence of an assault.


 In her telephoned message to Freitag, which was introduced in evidence, Smith
said that Rolig would not return her wallet, but did not say that he had abducted her. 
She did not say that she had been sexually assaulted.


 Although it was undisputed that Rolig had Smith's driver's license at Polly
Esther's, "if he did not intend to use it to lure her into his apartment, so that he could
assault her, he necessarily lacked the requisite intent to deprive her of its use. In
other words, if the evidence is factually insufficient as to the sexual assault count, it
is insufficient to support the theft charge, too."


 Although Rolig admitted engaging in cunnilingus, no rational trier of fact could
believe that this act was not consensual after finding him not guilty of the other two
counts of sexual assault. 



When reviewing the factual sufficiency of the evidence, we may not substantially
intrude upon the jury's role as the sole judge of the weight and credibility given to witness testimony. 
Johnson, 23 S.W.3d at 7 (citing Jones v. State, 944 S.W.2d 642, 648 (Tex. Crim. App. 1996)). 
Unless the available record clearly reveals a different result is appropriate, an appellate court must
defer to the jury's determination concerning the weight to give contradictory testimonial evidence. 
Id. at 9. A decision is not manifestly unjust simply because the fact-finder resolved conflicting views
of the evidence in the State's favor. Roise v. State, 7 S.W.3d 225, 233 (Tex. App.--Austin 1999,
pet. ref'd).

The evidence in this cause supports a number of alternative interpretations, some of
them innocent. Nevertheless, the proof of guilt is not so obviously weak or so greatly outweighed
by contrary proof as to compel the conclusion that it was manifestly unjust for the jury to find that
Rolig stole Smith's wallet and driver's license and that he thereafter forcibly contacted her sexual
organ with his mouth. The jury's failure to find Rolig guilty of the first two counts of sexual assault
does not alter this conclusion. As trier of fact, the jury was free to believe Rolig's claim that he
engaged in only the one sex act while at the same time believing Smith's testimony that she was
forced against her will to engage in that act. 

Point of error one is overruled.



Motion for New Trial


Rolig filed a motion for new trial alleging that the jury received other evidence after
retiring to deliberate. See Tex. R. App. P. 21.3(f). The motion was supported by the affidavit of a
defense investigator who interviewed juror Alice Cashman after the trial. She told him that during
deliberations she told the other jurors that she had taken Prozac and that in her experience the drug
"lowered a person's sexual libido." At the hearing on the motion, Cashman testified that she told
the other jurors "that I had been on Prozac and that it lowered my sexual libido." She said that she
made this remark after another juror mentioned that he had been on Prozac for a month and had
noticed that it decreased his sexual desire. Cashman did not remember if the foreman or any other
member of the jury cautioned against discussing this subject. Cashman testified that her experience
with Prozac did not become "a big topic of conversation," and it did not affect her verdict. (2)

The jury foreman also testified. He said that after Cashman and the other juror made
their remarks, "we quickly, as a group decided, hey, this may be out of bounds. So it was my
recollection that we then -- I put a question together and handed it to the bailiff and it came back
that we were not allowed to talk about." (3) He testified that there was no further discussion of jurors'
personal experiences with Prozac. He also testified that the jurors' comments regarding the effects
of Prozac did not influence his verdict.

At the conclusion of the hearing, the district court stated that "it's pretty clear that
some evidence got before the jury that shouldn't have got before the jury." (4) Nevertheless, the court
overruled the motion for new trial, citing the jurors' testimony that they were not affected by the
comments regarding the effects of Prozac and the foreman's testimony that the jury as a whole
determined that the subject was "out of bounds." We review the court's ruling for an abuse of
discretion. See Lewis v. State, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995).

A new trial must be granted pursuant to rule 21.3(f) if other evidence detrimental to
the accused was received by the jury. Garza v. State, 630 S.W.2d 272, 274 (Tex. Crim. App. 1981);
Carroll v. State, 990 S.W.2d 761, 762 (Tex. App.--Austin 1999, no pet.). (5) A passing remark or
mere mention of a matter does not constitute "receipt" of other evidence. Stephenson v. State, 571
S.W.2d 174, 176 (Tex. Crim. App. 1978); Avalos v. State, 850 S.W.2d 781, 783 (Tex.
App.--Houston [14th Dist.] 1993, no pet.). How the jury responded to the interjection of other
evidence is also important in assessing whether it was "received" by the jury. "If the other evidence
was met with an admonition that it is improper for the jury to consider it and it was not further
discussed, then that event will ordinarily not be considered a sufficiently serious breach of propriety
to require a new trial." 43A George E. Dix and Robert O. Dawson, Texas Practice: Criminal
Practice and Procedure § 41.63 (2d ed. 2001) (footnote omitted) (collecting cases). As the district
court noted, the foreman testified that the jurors determined that it was improper to consider their
colleagues' experiences with Prozac and there was no further discussion of the subject. Cashman
did not remember this, but she did recall that the subject was not "a big topic" during deliberations. 
On this record, we conclude that the district court did not abuse its discretion by determining that
the jury did not receive other evidence detrimental to Rolig. Point of error two is overruled.

The district court signed two judgments of conviction, one for each count of the
indictment on which Rolig was convicted. The judgments are affirmed.



 

 Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed: May 8, 2003

Do Not Publish
1. "Jane Smith" is the pseudonym used in the indictment to identify the complaining witness. 
See Tex. Code Crim. Proc. Ann. art. 57.02 (West Supp. 2003).
2. The State objected that the affidavit and Cashman's testimony were inadmissible under
Texas Rule of Evidence 606(b), which provides that a juror may not testify as to "any matter or
statement occurring during the jury's deliberations . . . as influencing any juror's assent to or dissent
from the verdict." The rule also proscribes the admission of a juror's affidavit or statement for such
a purpose. Tex. R. Evid. 606(b). The rule does permit a juror to testify whether "any outside
influence was improperly brought to bear upon any juror." Id. The court overruled the State's
objection on the ground that, at least arguably, Cashman's testimony concerned an "outside
influence." The State did not file a cross-appeal challenging this ruling. See Tex. Code Crim. Proc.
Ann. art. 44.01(c) (West Supp. 2003). We express no opinion as to whether the testimony adduced
at the new trial hearing was admissible under rule 606(b).
3. Among several notes from the jury to the judge was one asking, "Is the jury permitted to give
past examples of experiences that relate to the case? For example if a juror had some experience
with people who have been raped, can they elaborate on and compare and contrast their experiences
with the case?" The judge answered, "No."
4. "Other evidence" means something not already disclosed to the jury at trial. 43A George E.
Dix and Robert O. Dawson, Texas Practice: Criminal Practice and Procedure § 41.63 (2d ed. 2001). 
In light of Dr. Coons's testimony that Prozac could affect the libido by either increasing or
decreasing the user's sexual desire, it is debatable whether the jurors' comments regarding their own
experiences with the drug were, in fact, "other evidence." 
5. Garza construed former code of criminal procedure article 40.03(7), which was substantially
identical to rule 21.3(f). See Act of May 28, 1973, 63rd Leg., R.S., ch. 426, art. 3, § 5, 1973 Tex.
Gen. Laws 1122, 1128 (Tex. Code Crim. Proc. Ann. art. 40.03(7), since repealed).