**Putnam Darwin RICHARDSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–84–054 CR.**

Court of Appeals of Texas, Beaumont.

Jan. 17, 1985.

Hugh O'Fiel, Beaumont, for appellant.

John R. DeWitt, Asst. Crim. Dist. Atty., Beaumont, for appellee.

## OPINION

BROOKSHIRE, Justice.

This is an appeal from a conviction for aggravated kidnapping with intent to terrorize. The jury assessed punishment at confinement for fifty years.

The indictment returned against appellant alleged that appellant "did then and there intentionally and knowingly abduct Kathleen Ann Bosca ... without the consent of the Complainant, by using and threatening to use deadly force, with intent to prevent the liberation of the Complainant, and with intent to terrorize the Complainant."

Appellant, by his first and second grounds of error, contends the evidence is insufficient to prove the element of "terrorizing" as alleged in the indictment.

The record reveals that the victim, Bosca, was employed as an investigator for Joske's Department Store in Beaumont. She had first become acquainted with appellant as the result of an alleged "shoplifting" charge against him. Following appellant's conviction for such offense, this offense of kidnapping occurred.

In viewing the evidence in the light most favorable to the verdict, we find the same to be sufficient to support the verdict. The testimony of Bosca reveals that she lived in a trailer with her two minor children. At 10:30 p.m. on the night of the occasion in question, the lights in her trailer had gone off. She called the manager of the trailer park who then came to her trailer and discovered the switch had been pulled causing the lights to go off. After correcting this condition, the manager was standing outside the trailer talking to Bosca when appellant walked up and told him he was with "maintenance" and had come to check on the lights.

Appellant, with a gun in his hand, ordered the manager to go inside the trailer. After going inside, appellant ordered the manager to "lay on the floor" and then appellant handcuffed him. The two minor children were in the trailer at that time. After trying to talk to Bosca and attempting to convince her that she was wrong in arresting him for the shoplifting charge, appellant then produced two typewritten letters, which he had previously typed; one addressed to the attorney representing him on the shoplifting offense and the other to the Judge who tried the case. Appellant would not let Bosca read the letters and while brandishing the gun in her sight, forced Bosca to sign each letter. These letters were identical and were written to the Judge, and contained statements concerning some of her testimony given in the shoplifting trial and a statement that she, Bosca, had "lied under oath in your courtroom concerning most of the facts about [appellant] and his wife."

Appellant then forced Bosca and the manager to go in appellant's truck to his place of business, the Car Care Clinic. When they went into the building, appellant ordered the manager to handcuff him-

self to a car "lift" which he did. Appellant then drove himself and Bosca back to her trailer home. While they were there the police appeared and knocked on the door. At that time appellant went into the bathroom and hid the gun he had been using and also a smaller gun in his possession.

Bosca testified that appellant, during the entire time the events described above were taking place, had his gun in his possession and kept the same in sight of Bosca and the manager of the trailer park. She testified that she was, at all times, scared for herself and her children and did not know what appellant was going to do to them.

Appellant testified on his own behalf and admitted he went to Bosca's trailer house to talk to her about her testimony given in the shoplifting case. He admitted that he went there with a gun and wore surgical gloves so that his fingerprints would not be found in the trailer in case anything happened that would lead to another criminal charge against him. He admitted that when he first approached Bosca and the manager he pulled his gun out of his pocket and put it in such a position as to enable them to see it and demanded "let's all go inside." He also admitted to handcuffing the manager.

■ Appellant apparently contends that mere fright is not sufficient to prove the element of "terrorizing." Under the facts, as we have outlined them above, we do not agree that "terrorizing" was not proven. The testimony of Bosca demonstrates that appellant at all times had the gun in his possession, and kept it in Bosca's sight at all times while forcing her to go with him and also at the time he forced her to sign the letters.

We quote from *Rodriguez v. State*, 646 S.W.2d 524, 527 (Tex.App.—Houston [1st Dist.] 1982, no pet.):

(T)he authors of the Practice Commentary of the V.T.C.A. Penal Code, Section 20.04 address this problem:

Moreover, the definition of "abduct" in Section 20.01, which is an element of

both kidnapping and aggravated kidnapping covers conduct that itself transforms Section 20.03 kidnapping into Section 20.03 [sic] aggravated kidnapping—for example, restraint at gun-point would no doubt terrorize the victim.

■ In determining whether appellant intended to terrorize Bosca, we look at his actions. One's actions are generally reliable circumstantial evidence of one's intent. *Rodriguez v. State, supra.* The evidence in the case at bar is sufficient to prove the element of "terrorizing." These two grounds are overruled.

By his third and fourth grounds of error, appellant contends the court erred in "admitting states [sic] exhibit # 21 (a newspaper article from Phoenix, Arizona)" for the reason that the exhibit is "rank hearsay" and violates "appellants [sic] sixth amendment right to confrontation and his fourteenth amendment right to cross-examination. . . ." Appellant argues these two grounds together.

One of the arresting officers testified that he searched appellant's truck, which had been used in transporting Bosca to the Car Clinic and back to her trailer house, and removed therefrom twenty-seven items which were introduced into evidence. State's exhibit No. 21 was one of such items. This exhibit was a copy of an article appearing in a Phoenix, Arizona, newspaper. The first paragraph states:

Arizona historically has one of the highest suicide rates in the nation but a new trend seems to have developed in recent years—women shooting themselves in the head. . . .

The above paragraph was then followed by statistical information concerning suicides in the State of Arizona. Appellant argues that this case should be reversed because of the admission of this "hearsay evidence."

■ Generally speaking, hearsay is evidence of a statement made out of court which is offered for the purpose of proving the truth of such previous statement. *Gir-*

*ard v. State,* 631 S.W.2d 162, 164 (Tex. Crim.App.1982).

 It is clear from the record before us that the newspaper article was admitted into evidence along with twenty-six other items merely to show that such items were found in the truck. There is nothing in this record to show the article was introduced for the purpose of proving the truth of the statements contained in the article. Appellant does not contend such to be the purpose. The admission of the newspaper article, State's exhibit No. 21, did not violate the hearsay rule. *Beltran v. State,* 593 S.W.2d 688 (Tex.Crim.App.1980); *Haynes v. State,* 475 S.W.2d 739 (Tex.Crim.App. 1971). Moreover, the article did not, in any manner, refer to the offense for which appellant was prosecuted nor did it refer to appellant. It was merely a statistical report on suicides in Arizona. We fail to see how this appellant could have been prejudiced or harmed by the admission of the exhibit. Certainly, no reversible error is shown. These two grounds are overruled.

Appellant next contends the court erred in denying his motion for mistrial "upon the prosecutors commenting on the parole laws of the State of Texas during the punishment phase of this trial."

During the jury argument in the punishment phase of the trial, the prosecuting attorney made the following statement (objections to which were overruled and motion for mistrial denied):

> That means, he is starting off with a sentence of twenty-five years in the Texas Department of Corrections. The reason, because he's been finally convicted of two felony convictions, one being Burglary in Nineteen-sixty-six in Orange County, which he was sentenced, I think his own testimony was, to two years in the Texas Department of Corrections in Huntsville.
>
> About four months later, he gets out ...

Appellant contends the above argument was a "comment on the rules and regulations of Pardons and Paroles which jurors are not allowed to consider in assessing punishment."

During the course of the trial appellant admitted he had been previously convicted of five felonies. He testified that he received a two year sentence and was out on parole within four months. At the punishment phase of the trial, appellant entered a plea of "true" to two prior felony convictions as alleged in the indictment for enhancement purposes.

It is stated in *Alejandro v. State,* 493 S.W.2d 230, 231 (Tex.Crim.App.1973) that "jury arguments need to be within the areas of: (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) answer to argument of opposing counsel and (4) plea for law enforcement." (Citations omitted)

 The statement made by the prosecuting attorney refers to the minimum sentence of 25 years (with his two prior felony convictions) as was given by the court in the charge. The reference to the felony convictions had been admitted by appellant while testifying before the jury and the words "about four months later, he gets out" were almost identical to the words used by appellant in his testimony. Such statement was certainly within the area of summation of the evidence. We cannot hold that quoting the very words given by appellant in his testimony before the jury would constitute reversible error. This statement only contained a matter which was given to the jury in the court's charge and direct testimony given by appellant. Under such circumstances we find nothing in the argument that could be construed as urging the jury to impose an excessive prison term to compensate for or protect against the action of the Board of Pardons and Paroles. This ground is overruled.

Appellant next contends the court erred in "entering a non-indigency order requiring the appellant to incur the cost of transcription of his trial."

 Appellant asks this Court to reverse this conviction because the trial court refused to allow him a free statement of

facts. The record before us contains a complete statement of facts consisting of seven volumes. It is obvious that the statement of facts were paid for by appellant or some other person for him. If appellant had been improperly denied a free statement of facts because of the court's non-indigency order, he could have sought relief by appealing from such order. *See Zanghetti v. State,* 582 S.W.2d 461 (Tex.Crim.App.1979). Since a complete record has been furnished by appellant, the question of indigency on this appeal is now moot. This point is overruled.

We have carefully considered appellant's seventh ground of error, and finding it to be without merit the same is overruled.

The judgment is affirmed.