IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-04-00189-CR

 

Alanda Suzanne Fewins,

                                                                      Appellant

 v.

 

The State of Texas,

                                                                      Appellee

 

 

 



From the 220th District Court

Bosque County, Texas

Trial Court No. 00-05-13320-BCCR

 



MEMORANDUM  Opinion



 








          Appellant sent a letter to
this Court stating that she “no longer desire[s] to fight [her] appeal” and
that she “wish[es] for the entire appeal to be dropped.”  Appellant’s counsel
has filed a motion to withdraw the notice of appeal and dismiss the appeal
under Rule of Appellate Procedure 42.2.  See Tex. R. App. P. 42.2; McClain v. State, 17 S.W.3d 310,
311 (Tex. App.CWaco
2000, no pet.) (per curiam).  We have not issued a decision in this appeal. 
Appellant personally signed the letter stating her desire to “drop” the appeal. 
The Clerk of this Court has sent duplicate copies to the trial court clerk.  Id.  Accordingly, the appeal is dismissed.

PER CURIAM

 

Before
Chief Justice Gray,

Justice Vance, and

Justice Reyna

Appeal
dismissed

Opinion
delivered and filed December 7, 2005

Do not
publish

[CR25]






#160;                                                                          Appellee
 

From the County Court at Law
McLennan County, Texas
Trial Court Nos. 942059 CR1, 942061 CR1, 942069 CR1 & 942079 CR1

                                                                                                    

O P I N I O N
                                                                                                    

          Appellants Chris Keys, James Locander, James Phillips, and Paul Vaughn, were charged
with blocking the driveway at the Planned Parenthood abortion clinic in Waco on May 14, 1994,
in violation of Tex. Penal Code Ann. § 42.03 (Vernon 1994). In a trial before a jury,
Appellants were found guilty and the trial court, sitting as the assessor of punishment, fined them
$1500 each and sentenced them to six months of incarceration in the McLennan County Jail, the
jail term probated for one year.
          All four Appellants raise three identical points of error in which they argue: (1) the trial
court improperly commented on the weight of the evidence when it signed two of the four verdict
sheets in the space reserved for the jury foreman to sign if the jury should find the defendants
guilty of the charged offense; (2) they received ineffective assistance of counsel because their trial
counsel filed an untimely election for jury punishment; and (3) the trial court improperly relied
upon evidence outside the record in assessing their punishment. Appellants Keys and Vaughn
raise an additional fourth point of error wherein they complain that the trial court abused its
discretion in failing to find them indigent on appeal, which would have entitled them to court-appointed counsel on appeal and a free statement of facts. We affirm.
          In their first point of error Appellants contend that the trial court improperly commented
on the weight of the evidence by signing two of the verdict sheets. The record reveals that the
trial court provided the jury with four verdict forms, one for each of the defendants. After the
jury had begun their deliberations on guilt-innocence, the jurors discovered that the trial court had
signed two of the verdict sheets in the spaces where the foreman of the jury would sign to indicate
that the jury had found the named defendants guilty. The trial court apparently mistakenly thought
it was signing the charge as opposed to the verdict sheets. Once the error was discovered, the
foreman sent a note to the trial court notifying him of the problem. The trial court, upon receiving
the note, apparently decided not to notify the defense of the problem and instead chose to remedy
the situation by "whiting out" his signature. The defense, nevertheless, learned of the improper
signings through a spectator. The defense then confronted the trial court and objected to his
having signed the verdict sheets. The trial court overruled the objection and decided to have new
verdict forms printed and given to the jury.
          Article 36.16 of the Code of Criminal Procedure allows a trial court to withdraw and
correct its charge if convinced an erroneous charge had been given. Tex. Code Crim. Proc.
Ann. art. 36.16 (Vernon 1981); Smith v. State, 898 S.W.2d 838, 854 (Tex. Crim. App. 1995);
Bustillos v. State, 464 S.W.2d 118, 125 (Tex. Crim. App. 1971); Gaines v. State, 710 S.W.2d
630, 633 (Tex. App.—Dallas 1986, pet. ref'd).
          The trial court's signing of the verdict sheets was clearly improper. It is equally clear,
however, that it was a mistake. None of the jurors could have suspected that the trial court was
trying to indicate to them which way they should vote on Appellants' charges. The presence of
the trial court's signature on a space reserved for the "Presiding Juror" could only have been
perceived as a mistake. Because the jurors could only have understood from the trial court's error
that its signing of the verdict sheets was a mistake, we conclude that Appellants suffered no harm
from the error. Tex. R. App. P. 81(b)(2). Appellants' first point is overruled.
          In their second point of error Appellants complain that their Sixth Amendment right to the
reasonably effective assistance of counsel was violated when their trial counsels failed to file a
timely election to have the jury assess punishment. U.S. Const. amend. V, XIV; see Tex. Code
Crim. Proc. Ann. art. 37.07, § 2(b) (Vernon Supp. 1996).
          The right to the reasonably effective assistance of counsel does not include the right to
error free assistance. Ex parte Cruz, 739 S.W.2d 53, 58 (Tex. Crim. App. 1987). Nevertheless,
the Court of Criminal Appeals in Ex parte Walker, 794 S.W.2d 36 (Tex. Crim. App. 1990), held
that the single error of the untimely filing of an election for jury punishment could constitute the
ineffective assistance of counsel. The record in Walker, however, was much more extensive than
what has been provided to us. In Walker, evidence was adduced at the hearing on Walker's
petition for a writ of habeas corpus that his trial counsel had recommended to him that the jury
assess punishment because the trial judge had a reputation for assessing harsh sentences; that
Walker agreed to follow his trial counsel's advice; that Walker signed the motion to have the jury
assess punishment; and that the reason his trial counsel failed to file the election was simply a
mistake. Id. at 36.
          In the instant case, we have a record of a pre-trial hearing in which one of Appellants' trial
counsel erroneously argued to the trial court that the election was timely filed because of the
mailbox rule. Appellants' second trial counsel then stated that the reason the motions were not
filed earlier was because he had expected to have the trial date in Appellants' case continued to
a later date due to a conflict with another scheduled trial date counsel had in Tarrant County. 
Then, when the Tarrant County trial did not last as long as counsel had anticipated, he decided to
proceed with the originally scheduled trial date in Appellants' cases. This change in events caused
counsel to file the election at the last minute and, ultimately, late. Thus, the only information we
have for the reason for Appellants' untimely filing of their election for jury punishment was that
it was due to a mistake by their trial counsel.
          Essential to the Court of Criminal Appeals' decision in Walker were the facts that the
defendant had wanted the jury to assess punishment but his trial counsel mistakenly failed to file
the necessary election. See Walker, 794 S.W.2d at 37. Walker then at the hearing on his habeas
petition put on evidence about how his counsel had advised him to elect for jury punishment, how
he agreed with this advice, and how he wanted to file the election. See id. In the record provided
to us we can find no mentioning that Appellants had been advised by their counsel to elect for jury
punishment and that they wished to have the jury assess punishment. Without such evidence in
the record, and without any further allegations that trial counsel was in any other way ineffective,
we cannot conclude that Appellants received ineffective assistance of counsel at trial. See Grim
v. State, No. 11-95-292-CR, slip op. at 4-5 (Tex. App.—Eastland, May 9, 1996, no pet. h.). 
Appellants' second point is overruled.
          In their third point of error Appellants complain the trial court, sitting as the assessor of
punishment, erred in relying upon evidence that was not adduced at trial in deciding their
appropriate sentences. Appellants make three specific allegations: (1) that the trial court
improperly relied upon hearsay statements from unnamed judges officed at the McLennan County
Courthouse and unnamed courthouse personnel that Appellants and their companions engaged in
disruptive behavior while present in the courthouse; (2) that the trial court drew comparisons
between them and Paul Hill (who had been convicted of murdering an abortionist in Florida),
David Koresh, and Saddam Hussein, when no evidence was admitted at either the guilt-innocence
stage or the punishment stages of the trial on these public figures; and (3) that the trial court
improperly concluded from Appellants' collective failure to file applications for probation that
Appellants believe they are not subject to civil laws and that they do not want to be supervised by
the government. We hold that we are unable to address the merits of Appellants' complaint for
two reasons: (1) they failed to preserve the complaint at trial, and (2) assuming the trial court did
improperly rely upon out-of-court evidence in assessing punishment, they failed to produce any
evidence that the relied-upon evidence was adverse or detrimental to their interests.
          The trial court's comments are set out as follows:
 
THE COURT: Gentlemen, there are many reasons or theories that people are sentenced. 
Those include trying to deter recidivism, that being people who continually violate the law;
also, to deter others who might violate the law. By example, there is a reason to
rehabilitate a Defendant who continually violates the law, if that is possible to do. There
is a reason to impose restitution for those who are affected by somebody's crimes. There
is a reason for just pure punishment. As the Bible says, "an eye for an eye." Pure
unadulterated punishment. The number one reason that punishment is imposed in any
case, and particularly in this case, is to hold you accountable to the people of this State
who through their elected representatives have said that the conduct that you have engaged
in violates our rights to have an orderly society.
 
I know, and I can tell from what you told me today, that each one of you believes very
strongly in what you're doing. I also know that many of the people that I know in the pro-life movement believe that what you are doing discredits the message that you attempt to
get across. I know you don't believe that, but many of them do. And I am sure they have
communicated that to you. Beyond that, I personally know many people whose belief in
God, in my opinion, is as genuine as yours is, and those people believe that they're doing
God's will by helping these women that you have referred to.
 
What troubles me most is that in your actions, not only in the street on that day, but your
actions and the actions of your supporters during this trial here in the courthouse, I get the
feeling that on many occasions you feel like that this is some sort of game to be played out
in front of some stage. I have had other judges in the courthouse this week, other
courthouse personnel in their offices, come and ask me to try to control the situation in
here and out in the hallway because they can't conduct business. They can't hear what's
going on in their courtrooms. I had an employee in one of the offices on this floor tell me
that they have seen elementary school classes come through and have more respect for the
courthouse and the system than these folks have had this week. 
 
We live under a government of laws passed by elected representatives, enforced by peace
officers, interpreted and carried out by the courts. The belief that you express in
continuing to violate the law is that, as Mr. Phillips said, "If God tells me to do what's not
legal, I must do it." What is the difference between that and Paul Hill believing that God
told him to murder a doctor in Florida? In my opinion, the difference between your
attitude toward the law and his is only a difference of degree. The only difference is that
you men heard God tell you to commit a Class B misdemeanor. Mr. Hill heard God tell
him to commit a first degree felony, and he did it. Our society cannot exist under a system
that depends on any one man's choice of which laws to obey.
 
What about David Koresh who heard God tell him to sexually abuse children, to stockpile
weapons, to commit adultery, to have six or eight wives? Can we tell society that if you
want order in your society, you can depend on Mr. Phillips' interpretation to hear God,
but not Mr. Koresh's, or when does the Spirit of Christ become the spirit of anarchy?
 
I do not want to live in a society where individual men interpret God's laws and say that
should be the law of the land. If I did, I would go live somewhere like where Saddam
Hussein is ruler. He interprets the law, he believes that it's God's law, and he tells people
what they're going to do.
 
Please understand that I am not equating you gentlemen with Paul Hill, with David Koresh,
or with Saddam Hussein. I am not. What I am saying: That your belief that you are not
subject to the laws that are passed by our legislature are only different in a matter of
degree, not in attitude.
 
I understand that you are doing what you are doing because you think that you must do so. 
I also understand that you planned to be arrested in this case, that we received—not we,
but the people in Waco received a call that there were going to be some people arrested,
and sure enough, there were. What is the difference between that and any other criminal
conspiracy, when you plan ahead of time to violate the law with other people and then you
do it? I know that you did it because you believed in it. You have done it, not this time,
but many times, because you believed in it.
 
I assume if you planned to come to Waco planning to violate the law, planning to get
arrested so that you could have a forum for what you wanted to say, that you also planned
to go to jail when you did it. You have said—By failing to file an application for probation
and through your attorney you have said, "I don't want probation, because I don't feel like
I'm subject to the government of man. I don't want to be supervised by the government."
 
I am not in the habit of allowing Defendants to choose their punishment in criminal cases. 
If I assess punishment, I do the choosing. What I am going to do in this case is to impose
punishment of six months in the county jail and a fine of $1500.00. That is the maximum. 
I am further going to probate your six months jail term for a period of 12 months and place
you on probation. I will order you to pay a $1500.00 fine, for each one of you. I assume
that you are going to appeal these convictions[.]

          The record reveals that after the trial court made its comments, Appellants offered no
objection to its supposed improper reliance upon evidence outside the record. Without having
done so, Appellants failed to preserve the complaint for our review. Tex. R. App. P. 52(a); see
Green v. State, 912 S.W.2d 189, 192 (Tex. Crim. App. 1995); Woods v. State, 653 S.W.2d 1,
6 (Tex. Crim. App. [Panel Op.] 1982) (on rehearing).
          Appellants also failed to preserve their complaint for our review because they did not make
a record of any evidence that they were harmed by the trial court's alleged reliance upon out-of-court evidence in assessing punishment.
          Appellants apparently were unable to cite any authority directly on point when the trial
court, sitting in place of the jury either as the trier of fact or the assessor of punishment, relied
upon evidence outside the record in making its decision. Consequently, they analogize to cases
of improper jury argument where the prosecution refers to facts not in evidence. Appellants'
theory is that the prosecution, by introducing to the jury new facts during its closing argument,
denies the defendant a fair and impartial trial because the defendant has no opportunity to contest
or challenge the new evidence presented. Appellants argue that their right to a fair and impartial
punishment hearing was violated in the same manner.
          We find the case before us to be more akin to cases of jury misconduct where the jury
considers evidence outside the record either in determining guilt or in assessing punishment. The
law is well-settled that a defendant is entitled to a new trial if the jury considered evidence other
than what was adduced at trial if the evidence was (1) received by the jury and (2) adverse or
detrimental to his case. Cruz v. State, 838 S.W.2d 682, 687 (Tex. App.—Houston [14th Dist.]
1992, pet. ref'd); see Tex. R. App. P. 30(b)(7).


 The proper method by which to preserve error
from jury misconduct is for the defendant to file a motion for new trial requesting a hearing where
evidence may be taken for the trial court to consider whether the jury received adverse or
detrimental evidence. Matthews v. State, 803 S.W.2d 347, 350 (Tex. App.—Houston [14th Dist.]
1990, no pet.). Without such a hearing, no evidence can be presented to the court on appeal to
demonstrate that the trial court erred in failing to grant the requested motion for new trial. See
Tex. R. App. P. 50(a); see also Jordan v. State, 883 S.W.2d 664, 665 (Tex. Crim. App. 1994)
(purpose of hearing on motion for new trial is for a defendant to fully develop the issues raised
in the motion); Bruno v. State, 916 S.W.2d 4, 8 (Tex. App.—Houston [1st Dist.] 1995, no pet.
h.).
          In the instant case, Appellants did file a motion for new trial, but they made no allegation
that the trial court, in assessing punishment, improperly considered evidence that went outside the
record. As indicated above, the record from the punishment hearing does include the statements
upon which Appellants rely in requesting a new trial from this court, and undeniably, the trial
court referred to facts not in evidence when it lectured Appellants. But Appellants, to preserve
the complaint for our review, were required to demonstrate to the trial court that the court, as the
assessor of punishment, had not only referred to these facts, but that these facts were "adverse or
detrimental" to them. See Tex. R. App. P. 52(a); see also Drone v. State, 906 S.W.2d 608, 617
(Tex. App.—Austin 1995, no pet. h.); Avalos v. State, 850 S.W.2d 781, 783 (Tex.
App.—Houston [14th Dist.] 1993, no pet.); Cruz, 838 S.W.2d at 687.


 No record was made on
the allegedly adverse or detrimental nature of the comments made by the trial court. Therefore,
Appellants' complaint was not preserved for our review, and we overrule their third point.
          Appellants Keys and Vaughn raise a fourth point of error that the trial court erred in
refusing to find them indigent so that they could obtain court-appointed counsel on appeal and a
free statement of facts. The record reveals, however, that Keys and Vaughn both benefitted on
their appeals by the assistance of Glen W. Wood as their counsel and that a statement of facts was
filed for both of them. Because Keys and Vaughn both received the assistance of counsel and a
statement of facts was filed for both of them, their complaints in their respective fourth points of
error are moot. Richardson v. State, 690 S.W.2d 22, 25-26 (Tex. App.—Beaumont 1985, pet.
ref'd). The judgments are affirmed.


                                                                                 BOBBY L. CUMMINGS
                                                                                 Justice

Before Justice Cummings and
              Justice Vance
Affirmed
Opinion delivered and filed July 17, 1996
Do not publish